689 A.2d 166

COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, AND BARBARA WELLS, ANITA MCNUTT, LAURA A. REED, RONALD NUEL, JAMES AROSE, VICTORIA MAKRANSKY, ROSE DELVECCHIO, ANN LAURINO, MICHELE HOANG, MARYJANE QUINN, SUZANNE B. STARTS, MARIE D. IRWIN, RITA LAMBERT, EDWARD WORTMAN, CHRISTINE SANTIAGO, ELAINE LAMBERT, LOURDES FUENTES, ANN KELLY, SHARON CONA, JEAN KNOX, GERTRUDE WHITE, BEVERLY MCMURRAY, APRIL S. KRATZ, ANN M. ALLEN, SUE COCCIA, KARIN P. LINCOLN, SABRINA MELVIN, DONNA M. FRANCESCHINI, NORMA J. RUPLE, DAWN R. TORNEY, DONNA M. MONFORTE, MIKELLE BRISCOE, OLGA ITHIER, CHARLES V. KLINGBERG, NANCY GOMEZ, PATRICIA F. PFEFFERLE, PATRICIA E. MILOSZEWSKI, BERTHA M. HAGEN, MELANIE A. BAKER, KIMBERLY J. SMITH, JOANN LUZZI, MARGARET L. FOX, ANDREA A. MCGANN, MARYLOU WILSON, JANET SCHILLING, MICHELE A. HALDEMAN, JOAN R. CHAPMAN, GAIL S. BROCKWAY, ELIZABETH A. FEASLER, JOAN E. THOMAS, KELLY L. BLANKLEY, MICHELE M. HUMBRECHT, WALDEEN TOOMER, GARY A. SIMPERS, THERESA M. MADO-

SKY, DALE J. PORTER, EDNA M. PARCELS, CATHLEEN C. YATES, PATRICIA H. CALLAND, DOROTHY J. SMITH, MARIA T. DENSTEN, ROBERT H. IEZZI, MYRTLE M. GRAY, LENORA GREEN, SARAH A. TREMBECK, PATRICIA R. BRIANT, ROSE-ANN BARTLING, SHEILA ALEXANDER, MARIE DARPA-HOP-KINS, CARMELA GALLINA, CATHERINE LOUGHMAN, CLAIRE STITES, IRENE JOHNSON, JEANNE CHEESMAN, CARIDAD GALEA, MELINDA JEFFERSON, GLORIA REBO-VICH, PAULA RUELA, GINA TORALES, TONI ECKHARDT, LORETTA BAILEY, MONIQUE BERRY, ANITA DAVEY, SHEL-LY DIXON, MARTHA ENRIQUEZ, CLARA JONES, KATH-ERINE JONES, FRAN LOCKETT, KEISHA TAYLOR, CON-STANCE GORDON, SUSAN HAIGHT, BARBARA HAWKINS, RITA HERMANNS, DOLORES NICHOLAS, ROBERTA NICH-OLAS, GLORIA QUINN, MICHELLE BATTLE-WEST, PAIGE CLEMONS, LILLIAN DELOACH, SALIHAH MUHAMMAD, EVELYN RIVERA, CYNTHIA TANN, TAMESHONE WILLIAMS, PAMELA WRIGHT, KATHLEEN GARRIGAN, MARY GARRIS, JOANN KEENAN-LARICK, KELLY VAN HISE, TAMMY VEA-LEY, EDITH BAEZ, DAISY CAPOTE, MARGARET FARLEY, ROSEANN GIBBS, MARITZA GONZALEZ, OLGA LINARES, SO-NIA NOEL, WANDA RODRIGUEZ, DELMA RODRIGUEZ, JUST-INA SUERO, DEYANNA BAIRD, DOROTHY BRASMER, DE-LORES COSGROVE, HELEN LEON, PRISCILLA LEUCK, ANGELA MASSARO, DONNA MILLER, MYRIAM MUINA, DIE-DRE VANDUNK, DEBORAH BECOTE, VALRIE HENRY, ELBA SUAREZ, FLOR TORRES, KATHLEEN GROOME, JACQUE-LINE HOWARD, NANCY LAMSON, EVONNE LONG, DOLORES MARANILLI, GWENDOLYNN ROSS, DIANA WISE, SHEILA ARMSTRONG, GERTRUDE BROOKS, PATRICIA DITULLIO, RUTH EFRUS, ELIZABETH FERGUSON, MERYL HAYS, GLADYS JENNINGS, EMILY RENZULLO, TALIANA WOOD-BRIDGE, CHARLENE BOOTH, VIOLA BOYKINS, DIANE CAN-GAELOSI, LIDIA CROCCO, SUSAN FULLER, DIANE GROTZ, DAU THI HOANG, RONA HOLMES, SUREE SAEJIA, DOROTHY TALAMINI, PRIOR SCHLENDORF, SHIRLEY CALDWELL, MARYLOU CAMMISA, ARTHERIA DAVIS, EUGENE FAR-RELL, ESTHER FRAZIER, THOMAS HURLEY, DORIS KAN-TER, BEVERLY NATOLI, ANNE REID, CONSTANCE RIZZO, KAREN SCELZA AND CYNTHIA WILLIAMSON, PLAINTIFFS-APPELLANTS, v. CHRISTINE TODD WHITMAN, GOVERNOR

OF THE STATE OF NEW JERSEY, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, DEBORAH PORITZ, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, AND C. RICHARD KAMIN, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 4, 1996—Decided February 27, 1997.

Before Judges LANDAU, WALLACE and KIMMELMAN.

*Steven P. Weissman* argued the cause for appellants (*Weissman & Mintz*, attorneys; *Mr. Weissman*, on the brief).

*Lewis A. Scheindlin*, Deputy Attorney General, argued the cause for respondents (*Peter Verniero*, Attorney General, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Mr. Scheindlin*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal from a *R.* 4:6–2(e) order of dismissal. The plaintiffs in this case are the Communications Workers of America, AFL–CIO, and individual members of that union who were formerly State employees at certain State-operated Motor Vehicle (MV) agencies which were re-privatized in 1995 by an executive order of reorganization issued pursuant to *N.J.S.A.* 52:14C–1, –11.

This followed a nine year period when twenty-five agencies were being operated directly by the Division of Motor Vehicles.

Since 1986, efficiency of direct State operation has been explored, using a hybrid system in which about half the Motor Vehicle agencies remained private and half were operated by the State. The new plan again privatizes the local agencies that the DMV had been operating, with the Director continuing to appoint private Motor Vehicle agents as independent contractors under *N.J.S.A.* 39:3–3. This statute, which provides authority for the Director's appointment and removal at will of Motor Vehicle agents, has remained unchanged in its essence since 1921. *See In re Fitzgerald,* 188 *N.J.Super.* 476, 457 *A.*2d 1208 (App.Div.1983).

Public bidding has never been employed by DMV directors when exercising the appointment power conferred under *N.J.S.A.* 39:3–3. On May 12, 1995, the re-privatization plan became effective.

Plaintiffs sought declaratory and injunctive relief in the Law Division, asserting that re-privatization violated their First Amendment rights by discriminating against them on the basis of party affiliation; violated public contract competitive bidding and civil service statutes; and denied them due process and equal protection of the law. Named as defendants were the Governor of New Jersey, the Attorney General and the State Motor Vehicle Director (hereinafter referred to collectively as the "State", unless separately referenced).

Plaintiffs moved for a preliminary injunction to halt privatization. This was denied. Following a hearing on the State's cross-motion to dismiss for failure to state a cause of action, the motion judge entered an order dismissing the entire complaint. This appeal followed. Requests for stay pending appeal were denied. We affirm in part and reverse and remand in part.

### Standard of Review

In determining whether a complaint states an actionable claim, a reviewing court must scan its allegations with great

liberality before the court can grant a motion to dismiss on the pleadings pursuant to *R.* 4:6–2(e). The allegations must be taken as true, and all inferences must be resolved in favor of plaintiffs. *See Printing Mart–Morristown v. Sharp Electronics Corp.,* 116 *N.J.* 739, 746, 772, 563 *A.*2d 31 (1989); *Velantzas v. Colgate–Palmolive Co.,* 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988).

### The Arguments

It is argued that the Motor Vehicle Director may not award contracts to private Motor Vehicle agents under *N.J.S.A.* 39:3–3 without complying with the advertising and bidding requirements of *N.J.S.A.* 52:34–5. Plaintiffs say that only strict adherence to the public bidding laws can protect against "resurrection of a patronage appointment system."

In a related argument, plaintiffs challenge the motion judge's reliance upon *Horn v. Kean,* 796 *F.*2d 668 (3d Cir.1986). In *Horn,* a severely split Court of Appeals held in an *en banc* opinion that the First Amendment was not violated when New Jersey Motor Vehicle agents, found by that court under New Jersey decisional law to be independent contractors rather than public employees, can be replaced for political reasons. The Third Circuit held that the First Amendment protections afforded to public employees under *Elrod v. Burns,* 427 *U.S.* 347, 96 *S.Ct.* 2673, 49 *L.Ed.*2d 547 (1976) and *Branti v. Finkel,* 445 *U.S.* 507, 100 *S.Ct.* 1287, 63 *L.Ed.*2d 574 (1980) were not applicable to the New Jersey agents. Plaintiffs here contend that while the privatization scheme may not have removed them from their jobs because of their own personal beliefs or actions, it did permit appointment of politically connected independent contractors. This, it is argued, violates the constitutional right to affiliate or to choose not to affiliate with a political party. Moreover, as civil service employees, plaintiffs say in effect, their rights to protection against loss of jobs and pension vesting opportunities should rise even higher than rights of independent contractor Motor Vehicle agents who are replaced or removed for political reasons.

Finally, plaintiffs assert that the early dismissal of their complaint on the pleadings operated to deny them the right to explore by discovery the degree of control exercised by the Motor Vehicle Director over how Motor Vehicle agents perform their duties, and thus whether they are, in fact or law, actually state employees rather than independent contractors. It is argued, too, that plaintiffs' due process and equal protection claims should not have been dismissed on the pleadings.

### The Horn First Amendment Issue

■ Several months after the motion judge granted the State's motion, the United States Supreme Court decided *Board of Comm'rs, Wabaunsee County v. Umbehr,* —— *U.S.* ——, 116 *S.Ct.* 2342, 135 *L.Ed.*2d 843 (1996) and *O'Hare Truck Service v. City of Northlake,* —— *U.S.* ——, 116 *S.Ct.* 2353, 135 *L.Ed.*2d 874 (1996). In these cases, the Supreme Court found that independent contractors were entitled to protection under the First Amendment from termination of their contracts in retaliation for exercise of the freedom of political affiliation and participation, subject to a weighing process of the government's interest as a contractor against those free speech interests in accordance with *Pickering v. Bd. of Ed.,* 391 *U.S.* 563, 568, 88 *S.Ct.* 1731, 1734–35, 20 *L.Ed.*2d 811 (1968).

*Umbehr* and *O'Hare* thus extended to independent contractors the rights heretofore enjoyed by public employees under *Branti v. Finkel,* 445 *U.S.* 507, 100 *S.Ct.* 1287, 63 *L.Ed.*2d 574 (1980) and *Elrod v. Burns,* 427 *U.S.* 347, 96 *S.Ct.* 2673, 49 *L.Ed.*2d 547 (1976) and to *prospective* public employees under *Rutan v. Republican Party of Ill.,* 497 *U.S.* 62, 110 *S.Ct.* 2729, 111 *L.Ed.*2d 52, *reh'g. denied* 497 *U.S.* 1050, 111 *S.Ct.* 13, 111 *L.Ed.*2d 828 (1990). *Umbehr* and *O'Hare* reject the rationale of the plurality opinion in *Horn v. Kean, supra,* to the extent it distinguished the First Amendment interests implicated when public employees are coerced in their political beliefs by patronage practices, from the First Amendment interests of persons who contract independently

with the State. *See O'Hare,* ⸺ *U.S.* at ⸺, 116 *S.Ct.* at 2359, 135 *L.Ed.*2d at 884. It is now clear that independent contractors such as the New Jersey Motor Vehicle agents, previously held in *Horn* not to be insulated by the First Amendment from patronage replacement[1], must be afforded the same First Amendment protection enjoyed by government employees and prospective government employees under *Rutan, Elrod* and *Branti.*

> Although the government has broad discretion in formulating its contracting policies, we hold that the protections of *Elrod* and *Branti* extend to an instance ... where government retaliates against a contractor, or a regular provider of services, for the exercise of rights of political association or the expression of political allegiance.
>
> [*O'Hare, supra,* ⸺ *U.S.* at ⸺, 116 *S.Ct.* at 2355, 135 *L.Ed.*2d at 879.]

Had *Umbehr* and *O'Hare* been decided before this matter was heard in the Law Division, the opinion below unquestionably would not have concluded that "the limitations imposed on the State by *Elrod* and *Branti* do not extend to the independent contractors who serve as New Jersey Motor vehicle agents." To the extent *Horn* may have found constitutional the use of a political loyalty or affiliation test as a condition to retention or appointment of independent Motor Vehicle contractors, it is no longer binding precedent.

▮ Thus, instances of politically based discrimination in the implementation of the re-privatization policy may be challenged in court by prospective agents who are allegedly denied appointment for political reasons or by existing agents who allege they have been terminated for such reasons.

▮ It is undisputed that defendants did not take direct action to terminate plaintiffs by reason of knowledge of the employees' political affiliations, because defendants did not know what these affiliations were. However, plaintiffs assert broadly that the

---

[1] Ironically, *Horn v. Kean* arose when a prior administration, implemented the public operation test by terminating a number of private motor vehicle agencies, replacing them with a publicly run operation, termination of which during the present administration has engendered the present litigation.

decision to re-privatize was made primarily to reward the political faithful. Even if they were not removed because of their own political views, plaintiffs say that their allegation that the re-privatization plan was adopted to make room for the appointment of politically faithful private agents is sufficient to state a cause of action. For this argument, plaintiffs rely upon *Bennis v. Gable,* 823 *F.*2d 723 (3d Cir.1987), where it was held that even if public employees were not demoted for their own political views but rather to make room for appointment of new public employees who were political supporters of the defendants, a cause of action based on the First Amendment would lie.

The motion judge rejected the *Bennis* argument because of his belief that *Horn* governed. That analysis fails now that *Umbehr* and *O'Hare* have overruled *Horn's* exclusion of independent contractors from First Amendment protection against politically motivated appointment or removal. We conclude that the *Bennis*-based claims should not have been dismissed.

The rationale for the *Bennis* holding was that the public employee demotions actually reflected a penalty for *failure* to support, as the demotions were effected to make room for political supporters. *See Bennis, supra,* at 731, and cases cited therein. In other words, the basis for holding unconstitutional the politically based action in *Bennis* was that, logically, it could be viewed to have been directed at the plaintiffs who were not active political supporters.

Paragraphs 252 through 267 of the complaint[2], read with the liberality and breadth of inferences required on a *R.* 4:6–2(e) motion, allege that former State-run office supervisors and CSR I's (the next highest ranking employees in the State-run Motor Vehicle offices) were advised that, absent Republican political connections, they would not be considered for appointment as private Motor Vehicle agents. The complaint additionally asserts that defendants were only interviewing current DMV employees

---

[2] These paragraphs of the complaint are set forth in the annexed appendix.

who were registered Republicans for private agent positions, and that the "overwhelming majority" of the individual plaintiffs are either registered Democrats, independents or unregistered, and therefore were not being considered for the private agent appointments. The record before the motion judge, and presently before us, may well be insufficient to defeat a motion for summary judgment under the standards recently re-stated in *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995). However, if accepted as true, the above allegations do sufficiently indicate that the individual plaintiffs were not, or are not, considered for Motor Vehicle agent appointments because they were not politically active Republicans. We conclude that under *Umbehr*, *O'Hare*, *Rutan* and *Bennis*, persons who allege that they were refused appointment to non-confidential, non-policy making Motor Vehicle agent posts because of their political beliefs or political inaction state a cognizable First Amendment claim for relief.

### *The Remaining Issues*

As to the remaining allegations of the complaint, we affirm their dismissal substantially for the reasons set forth by Judge Carchman. We add the following comments.

As to the public bidding issue, our decisions in *Fitzgerald*, *supra*, and *Carluccio v. Ferber*, 18 *N.J.Super.* 473, 87 *A.*2d 439 (App.Div.1952) have made clear that other statutes were subordinate to the Legislature's clearly expressed intent in *N.J.S.A.* 39:3–3 to place in the Director's hands "large and unusual determinative powers, including the designation and removal" of motor vehicle agents. *Carluccio, supra*, at 477, 87 *A.*2d 439; *Fitzgerald*, *supra*, at 477–480, 457 *A.*2d 1208. Salutary though we recognize them to be, the bidding requirements of the Public Contracts Law, *N.J.S.A.* 52:34–6 to –19, are manifestly incompatible with the breadth of the legislative delegation of discretionary appointment and removal power to the Director in *N.J.S.A.* 39:3–3. This power has openly and continuously been exercised for the better part of this century without legislative modification despite amendments

to the statute before and after enactment of the Public Contract Law. We will not now presume to impose judicially, by statutory interpretation, a requirement for public bidding which does not accord with the apparent understanding of the intent of *N.J.S.A.* 39:3–3 by both of the elected branches of government.

The nature of the Motor Vehicle agency appointment and supervision process has changed little over the years, surviving repeated judicial and legislative examination. Unless conducted in an unconstitutional manner, we see no present occasion to revisit the longstanding method of appointing Motor Vehicle agents, nor to inquire whether the extent of State supervision over these private agencies, substantially similar for decades, should now be viewed as an avoidance of civil service and public employment statutes.

Plaintiffs suggest that discovery, and closer scrutiny of the motor vehicle agency operations should have been allowed, permitting exploration of the true nature of the relationship, i.e., whether that of independent contractor or a disguised form of State employment. They argue that cases such as *MacDougall v. Weichert*, 144 *N.J.* 380, 388, 677 *A.*2d 162 (1996) hold that salient features of a working relationship should be examined for this purpose. This case is not like *MacDougall.* Much as with the history of the Public Contracts Law, the legislature has continued in effect the appointment and removal at will provisions of *N.J.S.A.* 39:3–3 respecting motor vehicle agents, despite repeated amendments to the Civil Service statutes. We interpret this history as legislative agreement with our decisions in *In re Fitzgerald* and *Carluccio v. Ferber. See also Monaghan v. Holy Trinity Church*, 275 *N.J.Super.* 594, 602, 646 *A.*2d 1130 (App.Div. 1994).

As to plaintiffs' due process and equal protection arguments, they were not bottomed on "fundamental rights" such as those made in their First Amendment argument, or on protected "liberty" interests. These might trigger a stricter due process standard. Neither have plaintiffs claimed that defendants employed a

suspect classification such as might trigger strict equal protection scrutiny under the U.S. Constitution. (See the discussion in *Greenberg v. Kimmelman,* 99 *N.J.* 552, 494 *A.*2d 294 (1985), at 563–568, on the similarity of result under the federal standards and the balancing test employed in New Jersey.)

The choice to return the Motor Vehicle agency program to private operation involves no suspect or semi-suspect classification. The State's goal here was perceived by the executive branch to be efficiency and economy. These goals are rationally related to legitimate State interests, *see In re American Reliance Ins. Co.,* 251 *N.J.Super.* 541, 551, 598 *A.*2d 1219 (App.Div.1991), *certif. denied,* 127 *N.J.* 556, 606 *A.*2d 369 (1992), and it suffices if the reasonableness of any distinctions be fairly debatable. *Id.*

## Conclusion

We affirm the dismissal of plaintiffs' complaint as to all plaintiffs for failure to state a cause of action on all counts other than those which assert the First Amendment based claims. As to the latter, we hold that the allegations made by the individual plaintiffs survive the extraordinary standards for dismissal on the pleadings. Dismissal of the complaint of plaintiff Communications Workers of America AFL/CIO is affirmed as to all counts.

Affirmed in part, reversed in part, and remanded for further proceedings.

## APPENDIX

Paragraphs 252 through 267 of the Complaint read as follows:

252. To become an Agent an applicant must complete a Motor Vehicle Agent Statement of Qualifications.

253. The Motor Vehicle Agent Statement of Qualifications has not been advertised or disseminated among any of DMV agency employees, including those supervisors who currently perform the jobs the private Agents will assume and CSR Is who, under State service, are eligible for those positions.

254. On February 24, 1995, a high-ranking DMV official stated to CWA Local 1037 Staff Representative George Krevet that while agency contracts will be formally awarded by Director Kamin, the candidates' names will be supplied by the Governor's Office.

255. On or about late February 1995, DMV spokesman Bob Thompson stated in an interview with Michelle Pellemans, a reporter for the Gloucester County Times, that "[t]he people proposed to be Agents are forwarded to [DMV] by the governor's office."

256. On or about February 24, 1995, Fred Fitchett, Camden County GOP chairman stated in an interview with Michelle Pellemans that approval for key appointments, such as Motor Vehicle Agents in his county, typically come through him.

257. Republican Assemblyman John A. Rocco's son-in-law, Mark Berenato, is one of those Agents for whom Fitchett admits he put in a good word.

258. Fitchett also admitted that Berenato had no specific qualifications for the job. Fitchett stated that "[t]hey send them through a program to learn how to be an agent."

259. Republican John Rogale, a legislative aide to Republican Senator John Matheussen and an Agent in charge of a private DMV agency, was also interviewed by Pellemans of the Gloucester County Times. In response to a question regarding why Democrat Mike Milan, who lost his agency at about the same time former Governor Jim Florio lost his re-election bid, "got the boot," Rogale replied, "[t]hat's pretty much a fact of life ... The governor brings in her team. The team, in turn, brings in whom they choose."

260. The following examples illustrate of the political nature of appointments to private agencies:

    a. Republican Edmund Bonnette was recently selected as the Agent for the private motor vehicle agency in Camden. Bonnette has strong ties to former Camden County Sheriff Bill Simon, a Republican, who, despite defendant Whitman's backing, lost his bid for re-election last year.

b. Republican Mark Berenato is a gubernatorial appointee to the Haddon Heights agency privatized earlier this year. Berenato is a former legislative aide to Republican Assemblyman John A. Rocco of Cherry Hill. He is also married to Rocco's daughter.

c. Republican John Rogale, a former Democrat and Washington Township council president, is now legislative aide to Republican Senator John Matheussen. Rogale is an Agent for the Williamstown agency.

d. Republican Carl Asselta, is the Agent for the Vineland DMV. Asselta is Vineland Republican chairman, and father of Nicholas, who replaced Republican Frank LoBiando as 2nd District assemblyman after LoBiando's congressional win last year.

e. Raymond Herr, Agent for the Lodi DMV, is a former Republican Councilman for Fairview.

f. Mariann Horan, Agent for the Morristown DMV, is a former aide to former Republican Senator Dorsey.

g. Jacqueline Thompson, Agent for the South Plainfield DMV, is the wife of former Republican Town Chair.

h. Ralph Bradley, Agent for the Bakers Basin DMV, is the Republican Mayor of East Windsor.

i. Arthur Julian, Agent for the Hamilton DMV, is a former head of the Mercer County Republican Committee.

j. Katherine Block, Agent for the Manahawkin DMV, is the wife of Republican Mayor of Stafford Township.

k. Gabrielle Korman, Agent for the Washington Township DMV, was employed by Republican Assemblyman Haytaian.

l. Marybeth Clevenger, a Democrat, is the Agent for the Salem DMV agency. Clevenger is a carryover from the Florio administration.

261. On or about March 1995, defendant Kamin approached a supervisor of a State-run agency and asked her if she had any connections with the Republican party. When she replied in the negative defendant Kamin told her that she was disqualified as a potential Agent.

262. In a letter to CWA dated March 20, 1995, defendant Kamin confirmed that the contracts awarded to private Agents will not be subject to competitive bid.

263. Upon information and belief, the contracts awarded will not be based upon the merit and fitness of applicants for Agent positions.

264. Upon information and belief, contracts will be awarded on the basis of political affiliation with the Republican party.

265. Voter registration records reflecting the political party affiliation of registered voters are public records to which defendants have access.

266. Defendants are only interviewing current DMV employees, who are registered Republicans, for private agent positions.

267. The overwhelming majority of individually named plaintiffs are either registered Democrats, independents or unregistered. They are not being considered for private agent positions.