762 A.2d 284 (2000)
335 N.J. Super. 283
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, and Barbara Wells, Anita McNutt, Laura A. Reed, Ronald Nuel, James Arose, Victoria Makransky, Rose Delvecchio, Ann Laurino, Michele Hoang, Maryjane Quittn, Suzanne B. Starts, Marie D. Irwin, Rita Lambert, Edward Wortman, Christine Santiago, Elaine Lambert, Lourdes Fuentes, Ann Kelly, Sharon Cona, Jean Knox, Gertrude White, Beverly McMurray, April S. Kratz, Ann M. Allen, Sue Coccia, Karin P. Lincoln, Sabrina Melvin, Donna M. Franceschini, Norma J. Ruple, Dawn R. Torney, Donna M. Monforte, Mikelle Briscoe, Olga Ithier, Charles V. Klingberg, Nancy Gomez, Patricia F. Pfefferle, Patricia E. Miloszewski, Bertha M. Hagen, Melanie A. Baker, Kimberly J. Smith, Joann Luzzi, Margaret *285 L. Fox, Andrea A. McGann, Marylou Wilson, Janet Schilling, Michele A. Haldeman, Joan R. Chapman, Gail S. Brockway, Elizabeth A. Feasler, Joan E. Thomas, Kelly L. Blankley, Michele M. Humbrecht, Waldeen Toomer, Gary A. Simpers, Theresa M. Madosky, Dale J. Porter, Edna M. Parcels, Cathleen C. Yates, Patricia H. Calland, Dorothy J. Smith, Maria T. Densten, Robert H. Iezzi, Myrtle M. Gray, Lenora Green, Sarah A. Trembeck, Patricia R. Briant, Roseann Bartling, Sheila Alexander, Marie Darpa-Hopkins, Carmela Gallina, Catherine Loughman, Claire Stites, Irene Johnson, Jeanne Cheesman, Caridad Galea, Melinda Jefferson, Gloria Rebovich, Paula Ruela, Gina Torales, Toni Eckhardt, Loretta Bailey, Monique Berry, Anita Davey, Shelly Dixon, Martha Enriquez, Clara Jones, Katherine Jones, Fran Lockett, Keisha Taylor, Constance Gordon, Susan Haight, Barbara Hawkins, Rita Hermanns, Dolores Nicholas, Roberta Nicholas, Gloria Quinn, Michelle Battle-West, Paige Clemons, Lillian Deloach, Salihah Muhammad, Evelyn Rivera, Cynthia Tann, Tameshone Williams, Pamela Wright, Kathleen Garrigan, Mary Garris, Joann Keenan-Larick, Kelly Van Hise, Tammy Vealey, Edith Baez, Daisy Capote, Margaret Farley, Roseann Gibbs, Maritza Gonzalez, Olga Linares, Sonia Noel, Wanda Rodriguez, Delma Rodriguez, Justina Suero, Deyanna Baird, Dorothy Brasmer, Delores Cosgrove, Helen Leon, Priscilla Leuck, Angela Massaro, Donna Miller, Myriam Muina, Diedre Vandunk, Deborah Becote, Valrie Henry, Elba Suarez, Flor Torres, Kathleen Groome, Jacqueline Howard, Nancy Lamson, Evonne Long, Dolores Maranilli, Gwendolynn Ross, Diana Wise, Sheila Armstrong, Gertrude Brooks, Patricia Ditullio, Ruth Efrus, Elizabeth Ferguson, Meryl Hays, Gladys Jennings, Emily Renzullo, Taliana Woodbridge, Charlene Booth, Viola Boykins, Diane Cangaelosi, Lidia Crocco, Susan Fuller, Diane Grotz, Dau Thi Hoang, Rona Holmes, Suree Saejia, Dorothy Talamini, Prior Schlendorf, Shirley Caldwell, Marylou Cammisa, Artheria Davis, Eugene Farrell, Esther Frazier, Thomas Hurey, Doris Kanter, Beverly Natoli, Anne Reid, Constance Rizzo, Karen Scelza and Cynthia Williamson, Plaintiffs-Appellants,
v.
Christine Todd WHITMAN, Governor of the State of New Jersey, in her individual and official capacity, Deborah Poritz, Attorney General of the State of New Jersey, in her individual and official capacity, and C. Richard Kamin, Director of the Division of Motor Vehicles, in his individual and official capacity, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 2000.
Decided November 30, 2000.
*286 Steven P. Weissman, Somerset, argued the cause for appellants (Weissman & Mintz, attorneys; Mr. Weissman, on the brief).
Josh Lichtblau, Deputy Attorney General, argued the cause for respondents (John J. Farmer, Jr., Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Mr. Lichtblau, on the brief).
Before Judges STERN, KESTIN and WEFING.
The opinion of the court was delivered by KESTIN, J.A.D.
This matter is before us a second time. In our earlier opinion in Communications Workers of America v. Whitman, 298 N.J.Super. 162, 689 A.2d 166 (App.Div. 1997) (Communications Workers I), we affirmed the trial court's order dismissing the complaint as to all claims except those of the individual plaintiffs based upon the First Amendment of the United States Constitution as extended in Board of County Comm'rs, Wabaunsee County v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), and O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). We remanded for a consideration of the remaining issues.
Such background facts as are required to understand the matter were recited in our earlier opinion:
The plaintiffs in this case are the Communications Workers of America, AFL-CIO, and individual members of that union who were formerly State employees at certain State-operated Motor Vehicle (MV) agencies which were re-privatized in 1995 by an executive order of reorganization issued pursuant to N.J.S.A. 52:14C-1, -11. This followed a nine year period when twenty-five agencies were being operated directly by the Division of Motor Vehicles.
Since 1986, efficiency of direct State operation has been explored, using a hybrid system in which about half the Motor Vehicle agencies remained private and half were operated by the State. The new plan again privatizes the local agencies that the DMV had been operating, with the Director continuing to appoint private Motor Vehicle agents as independent contractors under N.J.S.A. 39:3-3. This statute, which provides authority for the Director's appointment and removal at will of Motor Vehicle agents, has remained unchanged in its essence since 1921. See In re Fitzgerald, 188 N.J.Super. 476, 457 A.2d 1208 (App.Div.1983).

*287 Public bidding has never been employed by DMV directors when exercising the appointment power conferred under N.J.S.A. 39:3-3.
[Communications Workers I, supra, 298 N.J.Super. at 165-66, 689 A.2d 166.]
When the matter was considered by the trial court on remand, a qualified immunity issue was also raised and adjudicated. The individual plaintiffs now appeal from the trial court's dismissal of their First Amendment claims and its determination that defendants are immune from suit as individuals.
Judge Shuster framed the issues before him on remand, noting as we had that the decisional principle of Horn v. Kean, 796 F.2d 668 (3d Cir.1986)on which we perceived Judge Carchman had previously relied in reaching the trial court result which generated the earlier appealhad been effectively overruled in Umbehr and O'Hare. Previously, according to the court in Horn, "the First Amendment protections afforded to public employees [from removal for political reasons] under Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) were not applicable to the New Jersey [motor vehicle] agents[,]" Communications Workers I, supra, 298 N.J.Super. at 167, 689 A.2d 166, because "under New Jersey decisional law [they were] independent contractors rather than public employees[.]" Ibid. Judge Shuster accurately characterized Umbehr and O'Hare as holding "that independent contractors were [also] entitled to protection from termination of their contracts as a result of the exercise of the First Amendment freedom of political affiliation."[1]
Judge Shuster then framed the qualified immunity issue, see Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), as whether defendants' good faith compliance with law existing at the time of the conduct complained of, i.e., before the decisions in Umbehr and O'Hare, insulated them from liability:
Defendants move for dismissal of the remaining First Amendment-based claim because they argue that 1) qualified immunity shields them personally from civil liability; 2) as public officials being sued in their "official capacities," defendants are not "persons" within the meaning of a 42 U.S.C. § 1983 action; 3) plaintiffs have not set forth facts alleging the defendants' violation of current applicable laws; and 4) injunctive relief sought in the form of reversing the DMV's privatization would be violative of the separation of powers doctrine, judicially unfeasible, and plainly unjustified since defendants' privatization scheme is not presently in violation of law.
Plaintiffs argue that, on the contrary, based on the case law, defendants are not entitled to personal immunity for their First Amendment freedom of association violations. Plaintiffs also contend that defendants are "persons" within the meaning of 42 U.S.C. § 1983 and thus may be sued in their official capacities. Further, they contend that the issues presented are not moot because matters of continuing public importance are involved, and that prospective injunctive *288 relief is indeed appropriate for the continuing First Amendment violations.
Contending that plaintiffs misread the case law, defendants respond that because there simply was no cognizable First Amendment violation at the time of the DMV privatization in 1995, the qualified immunity analysis applies and as a result there is no claim on which to seek relief. Defendants reiterate that plaintiffs' suit is not legally supportablethere is no live controversy for the court to decide nor entitlement to any specific, feasible relief, either injunctive or monetary.
According to the allegations of the complaint, all of the individual plaintiffs were employees of the Division of Motor Vehicles (DMV) at agencies to be privatized. Plaintiff Communications Workers of America, AFL-CIO "is the exclusive majority representative of clerical, administrative and supervisory employees employed by state-run DMV agencies to be privatized by defendants."
This matter first came before us on appeal from the grant of a motion for dismissal under R. 4:6-2(e), failure to state a claim upon which relief can be granted. It has retained that procedural posture through the remand and is before us now in the same framework. We are mindful, as Judge Shuster explicitly was, that the test to be applied in such instances requires a "painstaking" examination of "the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App. Div.1957)). We are "not concerned with the ability of plaintiffs to prove the allegation[s] contained in the complaint" and are required to afford plaintiffs "every reasonable inference of fact." Ibid. "The examination of a complaint's allegations of fact required by the aforestated principles should be one that is ... undertaken with a generous and hospitable approach." Ibid.
We have searched in vain among the ninety-three numbered factual allegations in the complaint for a single contention that any individual plaintiff has suffered a likely job loss by reason of retaliation or otherwise for his or her own political beliefs. The individual plaintiffs have asserted instead, rather derivatively, that the job losses they anticipated at the time the complaint was filed would be the result of the policy decision to reprivatize and the acts undertaken by defendants in implementing that policy to reward others for their political beliefs or affiliations, and that the individual plaintiffs stood to suffer job or benefit losses as a result. More specifically, plaintiffs alleged that because the DMV agencies were to be re-privatized, the individual plaintiffs would no longer be public employees and that the re-privatization plan, "[b]y replacing public workers with private workers, ... will create lucrative positions for persons affiliated with the Republican party. DMV Agents [the employers of DMV agency staffs] selected by the Governor will be subject to political coercion and control, partisanship and personal favoritism."
The interests implicated in the holdings of Umbehr and O'Hare, and in Elrod, Branti and Rutan v. Republican Party, 497 U.S. 62, 110 S.Ct. 2729, 111 L. Ed.2d 52 (1990), upon which they are based, emanate from every person's right to be insulated from governmental retaliation for expressive exercises or beliefs protected by the First Amendment. This does not mean that every public act inspired by political partisanship is subject to challenge because it has a harmful consequence upon an individual. In order for a plaintiff to qualify for the protections afforded by Elrod, Branti, Rutan, Umbehr, and O'Hare, the interests advanced *289 must be sufficiently similar to those of the plaintiffs in the seminal cases.
In Communications Workers I, supra, 298 N.J.Super. at 170-71, 689 A.2d 166, we stated:
Paragraphs 252 through 267 of the complaint [footnote omitted], read with the liberality and breadth of inferences required on a R. 4:6-2(e) motion, allege that former State-run office supervisors and CSR I's (the next highest ranking employees in the State-run Motor Vehicle offices) were advised that, absent Republican political connections, they would not be considered for appointment as private Motor Vehicle agents. The complaint additionally asserts that defendants were only interviewing current DMV employees who were registered Republicans for private agent positions, and that the "overwhelming majority" of the individual plaintiffs are either registered Democrats, independents or unregistered, and therefore were not being considered for the private agent appointments. The record before the motion judge, and presently before us, may well be insufficient to defeat a motion for summary judgment under the standards recently re-stated in Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995). However, if accepted as true, the above allegations do sufficiently indicate that the individual plaintiffs were not, or are not, considered for Motor Vehicle agent appointments because they were not politically active Republicans. We conclude that under Umbehr, O'Hare, Rutan and Bennis [v. Gable, 823 F.2d 723 (3d Cir.1987) ], persons who allege that they were refused appointment to non-confidential, non-policy making Motor Vehicle agent posts because of their political beliefs or political inaction state a cognizable First Amendment claim for relief.
Further reflection with the benefit of the focused arguments advanced on remand and in this appeal, as well as the trial court's disposition on remand, establishes that there is no adequate basis upon which the claims of the individual plaintiffs can be seen to have sufficient viability to survive the motion to dismiss.
We have been unable to identify a single case in any court in the Elrod/Branti/Rutan/Umbehr/O'Hare line in which a derivative claim was asserted or credited. In every instance, the party raising the interest protected by the First Amendment was proceeding against a governmental officer or entity for the acts of that person or polity which penalized the claimant because of his or her own political beliefs. Here, no such claim is made. To the extent the harm the individual plaintiffs in this case apprehended at the time the complaint was filed eventually did occur, it was because those persons who were appointed as motor vehicle agents in the reprivatized scheme acted to deny individual plaintiffs or some of them employment in positions comparable to those they had held as public employees.
In the context of the previous relationship between those plaintiffs and the defendants they impleaded, what has occurred was an abolition of positions in public employment by reason of a change in public policy. Despite the insulations against not-for-cause dismissal which a typical civil service system bestows upon the persons protected by it, and except for the "bumping rights" which may exist under law or contract, no public employee has a right to job protection when a position is abolished. Prosecutor's Detectives and Investigators Ass'n v. Hudson County Bd. of Chosen Freeholders, 130 N.J.Super. 30, 43, 324 A.2d 897 (App.Div.), certif. denied, 66 N.J. 330, 331 A.2d 30 (1974); see also Voges v. Borough of Tinton Falls, 268 N.J.Super. 279, 287-88, 633 A.2d 566 (App. Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994).[2] This suit on the part of *290 the individual plaintiffs against the named defendants is manifestly one in which they initially sought to prevent and now seek to invalidate the abolition of the public employment positions they held.
Nothing in Elrod, Branti, Rutan, Umbehr, O'Hare or their progeny stands for the proposition that executive action authorized by statute, here N.J.S.A. 52:14C-1 to -11, may be nullified because it was allegedly engendered by political motives, even if a legitimate change in public policy cannot be identified. The only interest the rule of those cases protects is that of a person who has lost a public position or a contract because of a dismissal or abrogation by reason of his or her own political identification.
Here, the motor vehicle agency system was changed in two steps. First, the Division of Motor Vehicles was transferred from the Department of Law and Public Safety to the Department of Transportation "[i]n order to more efficiently manage and administer the State's motor vehicle services[.]" See Executive Reorganization Plan No. 002-1995, 27 N.J.R. 1340 (Apr. 3, 1995). Second, the privatization of motor vehicle agencies, announced by Governor Whitman in her 1995 budget as a step in "downsizing" State government, was effected later that year. By challenging the next step in this process, i.e., the abolition of the public employment positions they held, the individual plaintiffs seek to undo the reorganization plan and neutralize its policy basis. Plaintiffs allegea contention we must accept as established for the purposes of the instant motion to dismissthat the operators of the newly privately-run motor vehicle agencies were selected from among persons with Republican Party credentials or connections and that they, in turn, staffed their agencies with party loyalists.[3]
Yet, patently, the individual plaintiffs did not lose their positions in public employment *291 because of their political beliefs or affiliations. The positions were lost because they were abolished by a change in the means by which governmental services were to be rendered. Judge Carchman said as much in the trial court's initial consideration of this matter, which led to our decision in Communications Workers I:
Plaintiffs' allegations ... that they have been discriminated against on the basis of their political affiliation are legally deficient. While the First Amendment does protect certain public employees from discharge or other adverse employment action, [citing Rutan, Branti and Elrod ], there is no allegation or evidence in this instance that defendants were even aware of the political affiliation of any of the individual plaintiffs, and certainly, none that the State targeted these plaintiffs on that basis.
The primary evil sought to be avoided by the Court in the above cases is "press[ing] state employees and applicants to conform their beliefs ... to some state-selected orthodoxy[,]" Rutan, supra, 110 S.Ct. at 2737. Likewise, the Third Circuit has identified the Court's "central concern" to be that public employees not be "coerced by patronage practices to adopt or disassociate themselves from a particular political belief[.]" Horn[, supra, 796 F.2d at 674]. No action taken by the State in this matter implicates these concerns. These plaintiffs have not been dismissed in an attempt to enforce orthodoxy or belief or because of any particular opinions that they hold either individually or collectively. In fact, it is likely that this group of employees consists of some Republicans, some Democrats, and some who are politically unaffiliated. All of these workers are being laid off in order to privatize the State agency.
Nothing has been produced in response to this motion to dismiss which would lead the court to conclude that the political affiliation of these workers was a criterion utilized in this personnel decision. In fact, nothing indicates that the defendants even had knowledge of plaintiffs' political affiliations. Failure to show that defendants knew of plaintiffs' political affiliations and that these affiliations were a substantial or motivating factor in the State's decision to privatize the DMV mandates the dismissal of this count. [Citations omitted.] No evidence points this court to the conclusion that the State's decision to privatize all publicly-run DMV offices was made with discriminatory animus toward individual employees. Plaintiffs may not attack such a broad policy decision by attempting to transform it into an Elrod-Branti type of individual discrimination claim.
We are in substantial agreement with these observations and evaluations. Viewed in the most indulgent light, the allegations before us may be seen, simply, as that plaintiffs were denied employment in the private sector agencies because of their political affiliations or non-affiliations. This consequence is not actionable either under Elrod, Branti, Rutan, Umbehr and O'Hare, for a number of reasons, among which are that the operators of the privatized agencies are not parties to this proceeding and because the result of which plaintiffs complain does not impugn the genuineness of the policy underpinnings of the reorganization. We have been given no reason to perceive that the primary motivation of the reorganization was the elimination of plaintiffs' positions to make room for party loyalists rather than an implementation of the Governor's philosophy on how government should operate.
The only relief sought by these plaintiffs which is presently before us is a declaration that the privatization plan violates their First Amendment guarantees, and an adjudication of correlative statutory rights under 42 U.S.C.A. §§ 1983 and 1985. In this regard, plaintiffs seek, as well, injunctive relief against continuing violations, compensatory and punitive damages, and attorneys fees and litigation costs. No *292 other cause of action pleaded in the complaint survived our earlier disposition.
As indicated, we have reached a series of related conclusions based upon the record regarding these constitutionally-based claims. There is nothing in the privatization plan itself that violates plaintiffs' constitutional rights. Plaintiffs have not made any prima facie showing that the plan was designed to penalize them for, or otherwise burden, their political beliefs or identification, and there is nothing further in the First Amendment that, in the circumstances developed in the record, protects their status as public employees. And nothing the named defendants have done in effecting the privatization plan fits within the causes of action extended in Elrod, Branti, Rutan, Umbehr or O'Hare. Although plaintiffs may be taken to have established that the abolition of positions in public employment was a necessary corollary of the privatization plan, they have failed to make any showing that their positions were abolished as a way of achieving by indirection what the cases prohibit more directly: attainment of a retaliatory or partisan objective informed by plaintiffs' own political beliefs or identification.
Having determined that plaintiffs have not stated a constitutionally-based claim for which relief can be granted, we also conclude that they have no correlative cause of action under 42 U.S.C.A. §§ 1983 and 1985. Although we view favorably the decisional rationale employed by Judge Shuster in disposing of those claims, especially his reliance on defendants' qualified immunity, see Harlow v. Fitzgerald, supra, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410; see also Bennis, supra, 823 F.2d at 732, the issues are moot.
The trial court's order dismissing the balance of the complaint is affirmed.
NOTES
[1] It is now apparent that these plaintiffs are factually different from the plaintiffs in Horn. There, the plaintiffs were private contractors who operated motor vehicle agencies. They were being replaced by others on an alleged political-patronage basis. The Third Circuit Court of Appeals held that Elrod and Branti did not apply to independent contractors. The subsequent Supreme Court decisions in Umbehr and O'Hare held to the contrary, covering independent contractors by the Elrod/Branti rule. The individual plaintiffs in this matter are not private contractors. The holdings in Umbehr and O'Hare therefore do not apply to them and add nothing to the quality of their claims. These plaintiffs have proceeded on the basis that they were public employees who allegedly lost their positions for partisan political reasons. They are, consequently, in the same doctrinal-factual position as the plaintiffs in Elrod, Branti and Rutan v. Republican Party, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).
[2] Although, in the Prosecutor's Detectives case and in Voges, we dealt primarily with the construction and application of State statutes rather than issues of federal or State constitutional law and statutory claims based on them, a portion of our decisional rationale in each of those cases has an especially pertinent cogency in respect of the issues before us in this matter. In the Prosecutor's Detectives case, supra, 130 N.J.Super. at 43, 324 A.2d 897, we observed:

[I]t is well settled that a classified civil servant may be discharged or his position abolished where the desire is a good faith effort to achieve governmental economy or efficiency and the action is taken in the public interest. In such circumstances there is no threat of circumvention of the policy against political or other prohibited considerations. * * * Moreover, there is a presumption that the action of the employer was taken in good faith and the burden is on the employee to show the contrary. * * *
Although there are exceptions, in general it may be assumed that the discrimination or other unfair conduct ... most often surfaces in the form of action taken against an individual employee, rather than large groups of similarly situated personnel. At least in instances of across-the-board changes in the terms and conditions of employment, as in the situations before us, the foregoing alien considerations to be guarded against will most often not be present. (Citations omitted.)
In Voges, supra, 268 N.J.Super. at 287-88, 633 A.2d 566, we adopted that reasoning and added:
Consequently, we conclude that so long as the reduction is truly job-related and not person-directed, that is, if the reduction of the position is not a mere pretext for removing a person from office position or employment, the government's actions may not be challenged under the "no removal except for cause" standard.
[3] We note but, in the context of reviewing the trial court's grant of defendants' motion to dismiss, accord no substantive value to the following passage in defendants' brief in the prior appeal:

The reprivatization of motor vehicle agencies was scheduled to take effect on July 8, 1995, and employees of the 23 State-operated agencies received layoff notices with that effective date. On July 8, 1995, the agencies were transferred to private agents and the DMV employees were laid off. It should be noted that in its negotiations with CWA concerning a new collective bargaining agreement, which were ongoing at that time, the State proposed that the DMV employees who were subject to layoff be given the right of first refusal for positions in the private agencies. The union rejected this proposal[.]