859 A.2d 716
JAMES C. VAN SICKLE, JR., PLAINTIFF–APPELLANT, v.
BOARD OF REVIEW, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 28, 2004—Decided October 20, 2004.

Before Judges COLLESTER, PARRILLO and GRALL.

*James C. Van Sickle, Jr.*, appellant pro se.

*Peter C. Harvey*, Attorney General of New Jersey, attorney for respondent, Motor Vehicle Services (*Patrick DeAlmeida*, Assistant Attorney General, of counsel; *Nonee Lee Wagner*, Deputy Attorney General, on the brief).

*Peter C. Harvey*, Attorney General of New Jersey (*Michael J. Haas*, Assistant Attorney General, of counsel; *John C. Turi*, Deputy Attorney General, on the statement in lieu of brief on behalf of the Board of Review).

The opinion of the court was delivered by

PARRILLO, J.A.D.

The issue in this appeal is whether an agent who provided services for the Motor Vehicles Commission (MVC)[1] at a privatized motor vehicle agency is an employee or independent contractor for purposes of the Unemployment Compensation Law, *N.J.S.A.* 43:21–1 to 24.4 (UCL). Claimant, James Van Sickle, Jr., appeals from a final decision of the Board of Review (Board) denying his unemployment benefits claim because the services he provided for respondent MVC did not constitute "employment." For reasons that follow, we affirm.

We view the exclusive issue in this appeal against the backdrop of the 1995 privatization of certain State-operated motor vehicle agencies by an executive order of reorganization issued pursuant to *N.J.S.A.* 52:14C–1 to –11, following a nine-year period when twenty-five agencies were being operated directly by the MVC. This change in New Jersey's motor vehicle agency system was documented in earlier decisions of this court. *Communications Workers of Am. v. Whitman*, 298 *N.J.Super.* 162, 689 *A.*2d 166 (App.Div.1997) (*Communications Workers I*), and *Communica-*

---

[1] Pursuant to *N.J.S.A.* 39:2A–4, as of June 3, 2003, the former Division of Motor Vehicles has been succeeded by the New Jersey Motor Vehicle Commission (MVC). The designation "MVC" will be used throughout this opinion to refer interchangeably to either the predecessor or successor agency.

*tions Workers of Am. v. Whitman,* 335 *N.J.Super.* 283, 762 *A.*2d 284 (App.Div.2000) (*Communications Workers II*), *certif. denied,* 167 *N.J.* 636, 772 *A.*2d 937 (2001). We have explained:

> Since 1986, efficiency of direct State operation has been explored, using a hybrid system in which about half the Motor Vehicle agencies remained private and half were operated by the State. The new plan again privatizes the local agencies that the [MVC] had been operating, with the Director continuing to appoint private Motor Vehicle agents as independent contractors under *N.J.S.A.* 39:3–3.
>
> [*Communications Workers II, supra,* 335 *N.J.Super.* at 286, 762 *A.*2d at 286 (quoting *Communications Workers I, supra,* 298 *N.J.Super.* at 166, 689 *A.*2d at 168).].

The other significant feature of the change was the transfer of the MVC from the Department of Law and Public Safety to the Department of Transportation "[i]n order to more efficiently manage and administer the State's motor vehicle services[.]" *See* Executive Reorganization Plan No. 002–1995, 27 *N.J.R.* 1340 (Apr. 3, 1995).

Pursuant to his contract with the MVC, claimant performed services as a motor vehicle agent from January 1, 1997, through September 30, 2002, when his authority to continue acting as an agent was revoked by the MVC pursuant to *N.J.S.A.* 39:3–3. As a motor vehicle agent, claimant's responsibilities included registering motor vehicles, licensing drivers, processing registration certificates, and collecting fees, taxes, and plates. According to the agreement, Van Sickle received an annual payment of $300,612.08 to compensate him "for all allowable [MVC] Agency expenses incurred by" him, including compensation for his employees and himself. In addition, Van Sickle was "eligible for an incentive and/or bonus award ... of a maximum of $23,000 per calendar year." The incentive or bonus awards were to be calculated according to the number of "items" processed by Van Sickle and his employees, such as "license plates, drivers' licenses, permits, registration certificates, and certificates of ownership."

Significantly, claimant stipulated in the contract that he is an independent contractor, and not an employee of the MVC, entitled to none of the rights accorded the latter status:

> The Agent, in accordance with its status as an independent contractor, covenants and agrees that it will conduct itself consistent with such status, that it will neither hold itself out as, nor claim to be, an officer or employee of the State by reason hereof. The Agent will not, by reason hereof, make any claim, demand or application to or for any right or privilege applicable to an officer or employee of the State, including but not limited to workers' compensation coverage, unemployment insurance benefits, social security coverage, or retirement membership or credit.

Consistent with this stipulation, claimant obtained a Federal tax number and filed a 1099 form as a self-employed individual for income tax purposes.

Upon revocation of his authority to act as a motor vehicle agent, Van Sickle filed a claim for unemployment benefits, which was initially denied on the ground "that he lacked sufficient base weeks or sufficient base year wages to establish a valid claim." The Appeal Tribunal reversed this determination, finding claimant entitled to benefits because he did not satisfy the three prongs of the so-called "ABC test" of self-employment under *N.J.S.A.* 43:21–19(i)(6)(A),(B),(C). On further appeal, the Board remanded the matter to the Appeal Tribunal, where claimant was again found "not self-employed" nor an independent contractor, and therefore, entitled to benefits. The MVC appealed and the Board reversed the Appeal Tribunal's decision that Van Sickle was an employee of the agency.

On appeal to this court, claimant argues, as he did below, that pursuant to the UCL, he is deemed an "employee" eligible for unemployment benefits unless it is shown he satisfies all three criteria of the "ABC" test for self-employment, *N.J.S.A.* 43:21–19(i)(6)(A),(B),(C), none of which he claims he meets. Of course, one who is classified an employee rather than an independent contractor may collect unemployment benefits, if otherwise eligible and not otherwise disqualified. *See generally N.J.S.A.* 43:21–4 (eligibility conditions); *N.J.S.A.* 43:21–5 (disqualification criteria); *Carpet Remnant Warehouse v. Dep't of Labor*, 125 *N.J.* 567, 582, 593 *A.*2d 1177, 1185 (1991).

However, the "ABC" test becomes applicable only after a determination that the service provided constitutes "employment,"

which is defined under *N.J.S.A.* 43:21–19(i)(1)(A) as "service ... performed for remuneration under any contract of hire ..." *See Carpet Remnant Warehouse, supra,* 125 *N.J.* at 581, 593 *A*.2d at 1184–85. Here, the Board determined that claimant's relationship with the MVC did not fall within the statutory definition. We accord weight to that decision on appeal, *id.* at 587, 593 *A*.2d at 1187–88; *Mayflower Sec. Co. v. Bureau of Sec.,* 64 *N.J.* 85, 93, 312 *A*.2d 497, 501 (1973), and grant the broadest deference to the agency in determining how best to implement or fulfill governmental policy. *Van Dalen v. Washington Tp.,* 120 *N.J.* 234, 245, 576 *A*.2d 819, 825 (1990).

The Board's conclusion that claimant's services to the MVC did not constitute employment is in accord with longstanding New Jersey decisional law. *In re Fitzgerald,* 188 *N.J.Super.* 476, 457 *A*.2d 1208 (App.Div.1983); *Carluccio v. Ferber,* 18 *N.J.Super.* 473, 87 *A*.2d 439 (App.Div.1952); *see also Horn v. Kean,* 796 *F*.2d 668 (3d Cir.1986). In *Carluccio,* a former motor vehicle inspection agent sought reinstatement to his position, arguing that as a veteran, the State could not, under the Veterans' Tenure Act, discharge him at will. We rejected this argument:

> [A]n agent designated under *R.S.* 39:3–3, *N.J.S.A.* is not a person 'holding any employment, position or office, under the government of this State' and 'receiving a salary from such State' within the intendment of the Veterans' Tenure Act.
> . . . .
> The Legislature obviously intended to, and did, place in the hands of the Director large and unusual determinative powers, including the designation and removal, and the fixing of the number and the compensation of such agents. Plainly the agent is not within the class of persons in public service contemplated by the Legislature to be limited to persons holding 'employment, position or office' and 'receiving a salary from such State' .... The legislative intention was to give the Director full rein to control the tenure of his agents and to appoint and remove at his pleasure.
>
> [18 *N.J.Super.* at 476, 477, 87 *A*.2d at 440.].

And in *In re Fitzgerald* we held that motor vehicle agents are not employees for purposes of the Exempt Firemen's Tenure Act. 188 *N.J.Super.* at 482, 457 *A*.2d at 1211. There, we examined characteristics of the employment relationship between the motor vehicle agent and the State, concluding that, "[b]y their nature, motor

vehicle agencies are independently run operations managed by independent contractors who are not subject to the benefits and protection of the State's pension and tenure statutes . . . ." *Ibid.* Finally, in *Horn v. Kean,* the Third Circuit, relying on this State authority, held that motor vehicle agents who brought a civil rights action against State officials, alleging they were removed because of their political affiliation in violation of their First Amendment rights, were "independent contractors" rather than public employees. The agents, therefore, were not protected by the First Amendment from being replaced by the Governor's successor, who was of a different political party. 796 *F.*2d at 671.[2]

Claimant argues, nevertheless, that the characteristics of the relationship between motor vehicle agents and the MVC have changed since the 1995 re-privatization, and thus, he is differently situated than the claimants in *In re Fitzgerald, supra,* and *Carluccio, supra.* He points to several aspects of the new motor vehicle system—increased State control, use of State facilities and equipment, and fixed compensation—as demonstrative of his employee status. We disagree.

The 1995 re-privatization did not alter the essential features of the motor vehicle agency arrangement or the status of motor vehicle agents as independent contractors. To the contrary, what occurred was an abolition of positions in public employment by reason of a change in policy. *Communications Workers II, supra,* 335 *N.J.Super.* at 291, 762 *A.*2d at 290. Most significantly, the reorganization plan still provided for the Director to continue to appoint private motor vehicle agents under *N.J.S.A.* 39:3–3. *Id.* at 286, 762 *A.*2d at 286. That statute, which places broad discretion-

---

[2] On this latter point, subsequent United States Supreme Court decisions in *Board of County Comm'rs, Wabaunsee County v. Umbehr,* 518 *U.S.* 668, 116 *S.Ct.* 2342, 135 *L.Ed.*2d 843 (1996), and *O'Hare Truck Serv., Inc. v. City of Northlake,* 518 *U.S.* 712, 116 *S.Ct.* 2353, 135 *L.Ed.*2d 874 (1996), held to the contrary, namely that independent contractors, like public employees, are entitled to protection from termination of their contracts as a result of the exercise of their First Amendment freedom of political affiliation.

ary power in the Director as to the appointment and removal at will of motor vehicle agents, to the avoidance of civil service and public employment statutes, has remained unchanged in its essence since 1921. *Ibid.*; *Communications Workers I, supra,* 298 *N.J.Super.* at 171–72, 689 *A.*2d at 170–71; *In re Fitzgerald, supra,* 188 *N.J.Super.* at 476, 457 *A.*2d 1208. Indeed, it was this essential feature of control over the appointment and removal process— retained to date—that led the court in *In re Fitzgerald* and *Carluccio* to conclude that motor vehicle agents were independent contractors rather than public employees.

Post-privatization decisions of this court reaffirm the distinction and support the Board's determination in this case. In *Communications Workers I, supra,* former State employees at certain State-operated motor vehicle agencies, which were re-privatized in 1995, sued State officials, asserting, among other grounds, that re-privatization violated their First Amendment rights by discriminating against them on the basis of party affiliation. 298 *N.J.Super.* at 166, 689 *A.*2d at 168. The trial court dismissed the entire complaint for failure to state a cause of action. On appeal, the plaintiffs asserted that early dismissal of their complaint on the pleadings denied them discovery as to the degree of control exercised by the MVC Director over how agents perform their duties and thus, whether they are in fact or law actually state employees rather than independent contractors. Although we ultimately found the distinction unimportant for First Amendment purposes because the constitutional protections apply to both classifications, we responded to the plaintiffs' specific argument as framed above:

> Plaintiffs suggest that discovery, and closer scrutiny of the motor vehicle agency operations should have been allowed, permitting exploration of the true nature of the relationship, i.e., whether that of independent contractor or a disguised form of State employment .... Much as with the history of the Public Contracts Law, the legislature has continued in effect the appointment and removal at will provisions of *N.J.S.A.* 39:3–3 respecting motor vehicle agents, despite repeated amendments to the Civil Service statutes. We interpret this history as legislative agreement with our decisions in *In re Fitzgerald* and *Carluccio v. Ferber. See also Monaghan v.*

*Holy Trinity Church,* 275 *N.J.Super.* 594, 602, 646 *A.*2d 1130[, 1134–35] (App.Div. 1994).

[298 *N.J.Super.* at 172, 689 *A.*2d at 171.].

We remanded for further proceedings on the plaintiffs' revived First Amendment-based claim that they were denied employment in the private sector agencies because of their political affiliations. *Id.* at 173, 689 *A.*2d at 171–72. After the trial court dismissed the surviving claim because of the defendant State officials' qualified immunity, the matter was before us a second time. *Communications Workers II, supra,* 335 *N.J.Super.* at 286–87, 762 *A.*2d at 286–87. On this appeal, we affirmed the dismissal of the constitutionally-based claim finding it non-actionable in part because the operators of the privatized agencies, whom the plaintiffs claimed staffed their agencies with party loyalists, were not parties to the proceeding. *Id.* at 294, 762 *A.*2d at 291–92. In other words, to the extent the plaintiffs may have been harmed, it was because of the actions of those persons who were appointed as motor vehicle agents in the re-privatized scheme. *Id.* at 290–91, 762 *A.*2d at 288–89. Implicit, therefore, in our rejection of the cause of action against the governmental officers and entity named as defendants was the finding that they bore no employment or other agency-type relationship with the actual, but unnamed parties in interest necessary to sustain a derivative claim. More explicitly, we reiterated language in our earlier opinion, *Communications Workers I, supra,* 298 *N.J.Super.* at 166, 689 *A.*2d at 168, to the effect that under the new privatization plan, the MVC continues "to appoint private Motor Vehicle agents as independent contractors under *N.J.S.A.* 39:3–3." *Communications Workers II, supra,* 335 *N.J.Super.* at 286, 762 *A.*2d at 286.

And lest there be any doubt as to the true nature of the relationship at issue, we need only refer to the contract between claimant and MVC, which clearly repudiates any claim by the agent to the rights, benefits and privileges accruing to State employees, and expressly establishes Van Sickle's status as an independent contractor.

Under the circumstances, we conclude claimant is not an employee of the State and is not entitled to unemployment compensation benefits.

Affirmed.