NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2411-14T3

RICHMOND LAPOLLA,

     Plaintiff-Appellant,

v.

COUNTY OF UNION and GEORGE
DEVANNEY, County Manager
and Individually,

     Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 28, 2017**
>
> **APPELLATE DIVISION**

Argued June 7, 2016 — Decided March 28, 2017

Before Judges Espinosa, Rothstadt and Currier.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-3547-11.

Susan B. Fellman argued the cause for appellant (Breuninger & Fellman, attorneys; Ms. Fellman and Patricia Breuninger, of counsel and on the briefs; Kathleen P. Ramalho, on the briefs).

Robert F. Varady argued the cause for respondent County of Union (LaCorte, Bundy, Varady & Kinsella, attorneys; Mr. Varady, of counsel and on the brief; Christina M. DiPalo, on the brief).

Robert F. Renaud argued the cause for respondent George Devanney (Palumbo Renaud & DeAppolonio, LLC, attorneys; Mr. Renaud, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

Plaintiff claimed to be the victim of political patronage, suffering adverse employment actions in part because his politically active brother sparred with the chairwoman of the Union County Democratic Party. Plaintiff's appeal from the dismissal of his complaint presents the question whether his familial and social affiliations qualify as constitutionally protected conduct that satisfies an essential element of his claims for violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, and retaliation. We hold that they do not.

Plaintiff Richmond Lapolla, a long-time employee of Union County, filed suit, alleging violations of the NJCRA and Article I, Sections 6 and 18, of the New Jersey Constitution, based upon political affiliation (count one) and intentional infliction of emotional distress (count two). He later amended the complaint to add a third count, alleging retaliation for filing this action. After summary judgment was granted, dismissing the complaint, plaintiff filed this appeal, challenging the dismissal of his NJCRA and retaliation claims. He also appeals

from the denial of his motion to file a third amended complaint to add another defendant.[1]  We affirm.

                                    I.

The evidence, viewed in the light most favorable to plaintiff, R. 4:46-2(c), can be summarized as follows.

Plaintiff began his employment with the County in 1979 as a maintenance repair carpenter.  Over the next twenty years plaintiff was promoted several times.

Plaintiff was a member of the Union County Democratic Committee (UCDC) for approximately ten years.  He made donations, handed out literature, and did some fundraising but never ran for office.

Plaintiff described two factions in the UCDC.  Charlotte DeFilippo was the chairwoman of the UCDC.  Plaintiff described the other faction as including his brother, Michael Lapolla,[2] and "anybody who didn't walk in lockstep with Charlotte DeFilippo." At his deposition, plaintiff was asked who belonged to this faction besides Michael.  He named the mayor of Elizabeth, J. Christian Bollwage, State Senator Joseph Suliga and former

---

[1]  Plaintiff does not appeal from the dismissal of count two. His argument regarding the denial of his motion to file a third amended complaint lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

[2]  We refer to plaintiff's brother by his first name to avoid confusion.

Freeholder Daniel Sullivan.  As to his own affiliation with that faction, plaintiff added, "I was not a part of it."  He was then asked, "So you were not part of the Lapolla faction?"  He replied, "As you call it, no."

Michael became County Manager in 1997.  According to plaintiff, DeFilippo was miffed because she had wanted defendant George Devanney to become County Manager and was not satisfied by the appointment of Devanney to Deputy County Manager.  In 1999, while his brother was County Manager, plaintiff became the head of the Division of Buildings and Grounds in the Department of Operational Services.  He obtained the Civil Service title of Director, Repair and Maintenance, a title he still holds.

Michael served as County Manager until 2002.  During his tenure, he clashed with DeFilippo over what he perceived as her attempts to unduly influence the day-to-day operations of the county.  In 2002, after DeFilippo told Michael she thought it was time for him to move on, he left his position to become Executive Director of the New Jersey Turnpike Authority.

After Michael resigned, Devanney became County Manager and plaintiff became director of the newly formed Department of Operations and Facilities.  Plaintiff continued to hold the titles of head of the Division of Operations within that department and chief of the Bureau of Construction Management,

which is included in the Division of Operations. As the head of a department, plaintiff reported directly to the County Manager. Plaintiff received criticisms from Devanney regarding his performance, beginning in early 2004, which he has termed "petty and unsubstantiated."

In early 2005, while plaintiff was on a month-long medical leave of absence, Devanney notified plaintiff he was being transferred to Union County Vocational Technical Schools (Vo-Tech) as Facilities Manager. Devanney did not need the approval of the Board of Freeholders to reassign plaintiff or remove him from the position of department director. Plaintiff asked to be allowed to retain his position as Division Head or Bureau Head, positions consistent with his Civil Service title. Devanney refused.

Although Vo-Tech was an autonomous body, the County continued to pay plaintiff's salary. According to plaintiff, there was no purpose to his being assigned to Vo-Tech; he had no responsibilities and his role did not meet the requirements of his Civil Service title.[3] However, plaintiff retained the Civil

_____

[3] N.J.A.C. 4A:3-3.9 establishes a procedure for an employee to request a "desk audit" to challenge assignment to a position when its duties do not conform to his Civil Service title. Although we do not accept defendant Devanney's argument that this was a necessary pre-requisite to plaintiff's commencement
(continued)

Service title of Director, Repair and Maintenance, that he had as Director of Operations and Facilities and continued to receive the same salary, which was $128,000 when the complaint was filed. Plaintiff did not file a complaint alleging this transfer constituted a politically-motivated violation of his constitutional rights until September 2011, more than six years after the transfer.

When Michael learned about the transfer, he contacted Devanney to try to work something out that would permit plaintiff to stay where he was. Although Devanney agreed, the transfer went through and Devanney later explained, "Charlotte [DeFilippo] said no." Michael believed this decision was motivated by DeFilippo's animus toward him, which he considered political in nature.

At his deposition, Devanney stated he had "lost all faith and confidence" in plaintiff after his "continual[] resistance, stonewalling and insubordination . . . throughout the years." He further explained that "department directors . . . are confidential aides" and that he could not "see eye to eye enough" with plaintiff to keep him as a department head.

_____

(continued)
of this action, we note that plaintiff did not avail himself of this opportunity.

Devanney restructured the County's departments once again, and transferred the duties of the Department of Operations & Facilities back to a division in the Department of Public Works.

Several of plaintiff's friends and coworkers provided certifications in which they stated that, beginning in late 2004, DeFilippo and Devanney discouraged them from associating with plaintiff and warned that doing so would be detrimental to their careers with the County.

At the end of July 2010, plaintiff's assignment to Vo-Tech came to an end because the construction projects he was ostensibly overseeing were completed. Devanney assigned plaintiff to the Juvenile Detention Center (JDC). He admitted he did not look for any job openings for plaintiff as a director or department head. The stated purpose for this assignment was to "organize, develop, and perform work on all matters pertaining to the maintenance and repair of [the JDC]." Devanney admitted, however, he had no idea who plaintiff would supervise or if there were people for him to supervise.

Plaintiff was assigned to a room approximately twelve by sixteen feet that resembled an electronics storage room. He did not have a computer for approximately one month and the telephone he had was restricted to internal use only.

Plaintiff testified that one of his supervisors at the JDC, Greg Lyons, told him he was "dumped" there. When he asked the other supervisor, Michael Brennan, what he was to do there, the supervisor "shrugged his shoulders," said, "I don't know," and left. Lyons was asked at his deposition whether plaintiff ever did anything throughout his assignment at JDC and replied, "Not as far as I know." Plaintiff testified that, for his entire tenure, he never did any work at the JDC.

In August 2011, Devanney retired. The Freeholders appointed Alfred Faella, a friend of Mayor Bollwage, to the position. Faella knew that Bollwage and DeFilippo did not like each other. Prior to his appointment, he met with DeFilippo, who advised him she had no objection to his appointment because Devanney recommended him.

Plaintiff filed his complaint in this action in mid-September 2011. On October 24, 2011, he was informed that, effective November 1, he was being transferred to the Watchung Stables Administrative Building, where he would be "responsible for the supervision of maintenance and repair of the facilities at the Watchung Stable, Trailside Nature & Science Center[,] and the Deserted Village of Feltville." Plaintiff's requests to meet with Faella were denied. On November 2, 2011, plaintiff was told "the County Manager sees no reason to meet" with him.

In the fall of 2013, the head of the Division of Facilities Management resigned. Plaintiff contacted Faella on two occasions to express his interest in the position he had previously held, and, after the job vacancy was formally posted, submitted an application for the position. Faella formed a committee to interview candidates. He testified the committee found two other candidates more impressive than plaintiff and that he decided to appoint one of those candidates. Plaintiff alleges the candidate selected was less qualified than he.

According to plaintiff, he saw County Freeholder Alexander Mirabella at a social function in September 2014, and brought up "the fact that he was not given his job [of Division Head] back." He stated that Mirabella responded, "You have a lawsuit against the County. Do you really think we're going to give you your job back?"

Plaintiff maintained his Civil Service title throughout his transfers and never suffered a reduction in pay, though he did lose "portal to portal" use of a County vehicle upon his transfer to Vo-Tech. At no point prior to the filing of the complaint in this action did plaintiff ever complain to Devanney or the Civil Service Commission about his position at Vo-Tech.

## II.

The NJCRA provides, in pertinent part:

Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

A plaintiff who alleges retaliation for political affiliation must show: (1) he was "employed at a public agency in a position that does not require political affiliation"; (2) he was "engaged in constitutionally protected conduct"; and (3) the conduct was "a substantial or motivating factor in the government's employment decision." Galli v. N.J. Meadowlands Comm'n., 490 F.3d 265, 271 (3d Cir. 2007). The statute of limitations for claims under the NJCRA is two years. See N.J.S.A. 2A:14-2(a).

The trial judge reviewed plaintiff's proofs to determine whether he presented a prima facie case of political affiliation and discrimination. Considering the first of the three Galli factors, she noted plaintiff was employed at a public agency in a position that does not require political affiliation.

Turning to the second <u>Galli</u> prong, the trial judge described plaintiff's claim of constitutionally protected political affiliation as "murky" and distinguishable from the facts in <u>Montone v. City of Jersey City</u>, 709 <u>F.</u>3d 181 (3d Cir. 2013) and <u>Goodman v. Pa. Tpk. Comm'n</u>, 293 <u>F.</u>3d 655, 663 (3d Cir. 2002), cases in which this prong was clearly satisfied. The judge concluded plaintiff "was not engaged in constitutionally protected conduct. He was just existing, he was just being." Because this failure of proof required dismissal of the NJCRA claim against the County, it was unnecessary for the judge to consider the application of the statute of limitations to plaintiff's claim. Nevertheless, she found the NJCRA claim time-barred. The trial judge also concluded Devanney had qualified immunity, requiring the dismissal of the NJCRA claim against him. In addition to dismissing the intentional infliction of emotional distress claim, the trial judge dismissed the retaliation claim.

In his appeal, plaintiff argues the trial judge erred in granting summary judgment because: the evidence presented a material issue of fact (Point I); there was sufficient evidence to satisfy the second element of a prima facie case for political retaliation (Point II); Devanney is not entitled to qualified immunity (Point III); the County is liable for

11

political affiliation retaliation (Point IV); defendants failed to offer facts to support their claim that plaintiff held a position in which political affiliation is required (Point V); the trial court failed to recognize that plaintiff presented prima facie evidence of the third Galli element (Point VI); plaintiff's NJCRA claim is not time-barred (Point VII); and plaintiff has a cognizable claim of retaliation against the County (Point VIII). Plaintiff also argues the trial court erred in denying his motion to file a third amended complaint to name Faella as a defendant in his retaliation claim.

In reviewing a summary judgment decision, we view the evidence "in the light most favorable to the non-moving party," and determine whether a genuine issue exists as to any material fact that precludes summary judgment. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 38, 41 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)). We review questions of law de novo. Davis v. Devereux Found., 209 N.J. 269, 286 (2012).

Applying these principles, we conclude summary judgment was properly granted because the trial judge correctly concluded plaintiff lacked prima facie evidence of the second element of his political affiliation discrimination claim. As a result, we need not address the arguments raised in Points V, VI and VII.

We also conclude Devanney is entitled to qualified immunity and that the retaliation claim was properly dismissed. Plaintiff's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

III.

We first address plaintiff's NJCRA claim.

In Elrod v. Burns, 427 U.S. 347, 372-73, 96 S. Ct. 2673, 2689, 49 L. Ed. 2d 547, 565 (1976), the United States Supreme Court held that termination of public employees' employment because of their political affiliation violates the First Amendment unless the position at issue involves policymaking. See also Branti v. Finkel, 445 U.S. 507, 513-17, 100 S. Ct. 1287, 1292-95, 63 L. Ed. 2d 574, 580-83 (1980). The Elrod-Branti doctrine was later expanded to hold "the First Amendment [also] protects public employees . . . from promotion, transfer, recalls, and other hiring decisions conditioned on political affiliation, unless the government can demonstrate that party affiliation is a proper requirement for the position." Galli, supra, 490 F.3d at 270-71 (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 75, 110 S. Ct. 2729, 2737, 111 L. Ed. 2d 52, 67 (1990)).

As the trial judge observed, the pivotal question is whether plaintiff was engaged in constitutionally protected

conduct.  See Galli, supra, 490 F.3d at 271.  Typically, this factor contemplates situations where the plaintiff is required to join or support the political party in power or suffers retaliation for supporting a losing candidate or for failing to engage in the political process whatsoever.  See Galli, supra, 490 F.3d at 272-73 (collecting cases).  In addition, "adverse employment actions taken against public employees merely 'to make positions available for political supporters' could amount to political discrimination."  Id. at 273 (quoting Bennis v. Gable, 823 F.2d 723, 731 (3d Cir. 1987)).  The second prong may also be satisfied when the public agency takes an adverse employment action against an employee based upon a mistaken belief he is engaging in protected political activity. Heffernan v. City of Paterson, 578 U.S. ___, ____, 136 S. Ct. 1412, 1418, 194 L. Ed. 2d 508, 514 (2016) (holding police officer demoted for picking up campaign sign as favor to bedridden parent was entitled to seek relief based on the city's mistaken belief the officer was engaging in political speech).

"This does not mean that every public act inspired by political partisanship is subject to challenge because it has a harmful consequence upon an individual."  Commc'ns Workers of Am. v Whitman, 335 N.J. Super. 283, 289-90 (App. Div. 2000) (finding no NJCRA violation where public employment positions

were abolished as a result of a change in public policy that privatized motor vehicle agencies). The constitutionally protected interests "emanate from every person's right to be insulated from governmental retaliation for <u>expressive exercises or beliefs protected by the First Amendment</u>." <u>Id.</u> at 289 (emphasis added). Therefore, the interest of a plaintiff who asserts a claim of political affiliation discrimination "must be sufficiently similar to those of the plaintiffs in the seminal cases," i.e., <u>Elrod</u>, <u>supra</u>, 427 <u>U.S.</u> 347, 96 <u>S. Ct.</u> 2673, 49 <u>L. Ed.</u> 2d 547; <u>Branti</u>, <u>supra</u>, 445 <u>U.S.</u> 507, 100 <u>S. Ct.</u> 1287, 63 <u>L. Ed.</u> 2d 574; <u>Rutan</u>, <u>supra</u>, 497 <u>U.S.</u> 62, 110 <u>S. Ct.</u> 2729, 111 <u>L. Ed.</u> 2d 52; <u>Bd. of County Comm'rs v. Umbehr</u>, 518 <u>U.S.</u> 668, 116 <u>S. Ct.</u> 2342, 135 <u>L. Ed.</u> 2d 843 (1996); and <u>O'Hare Truck Serv., Inc. v. City of Northlake</u>, 518 <u>U.S.</u> 712, 116 <u>S. Ct.</u> 2353, 135 <u>L. Ed.</u> 2d 874 (1996). <u>Commc'ns Workers</u>, <u>supra</u>, 335 <u>N.J. Super.</u> at 290.

In <u>Elrod</u>, the Court decided a newly elected Democratic sheriff could not constitutionally engage in the patronage practice of replacing certain office staff with members of his own party "when the existing employees lack or fail to obtain requisite support from, or fail to affiliate with, that party." 427 <u>U.S.</u> at 351, 373, 375, 96 <u>S. Ct.</u> at 2679, 2689, 2690, 49 <u>L. Ed.</u> 2d at 552, 565, 566 (plurality opinion; Stewart, J., joined by Blackmun, J., concurring in judgment). In a similar case of

patronage, assistant public defenders alleged their employment was terminated because they were members of the Republican party; the Court upheld an injunction against their termination. Branti, supra, 445 U.S. at 508, 520, 100 S. Ct. at 1289, 1296, 63 L. Ed. 2d at 578, 585. In Rutan, supra, 497 U.S. at 66, 110 S. Ct. at 2732, 111 L. Ed. 2d at 61, the Governor's Office imposed a hiring freeze that required agencies to obtain the "express permission" of the Governor's office for employment decisions such as "new hires, promotions, transfers, and recalls after layoffs." The criteria reviewed to determine whether approval was given included

> whether the applicant voted in Republican primaries in past election years, whether the applicant has provided financial or other support to the Republican Party and its candidates, whether the applicant has promised to join and work for the Republican Party in the future, and whether the applicant has the support of Republican Party officials at state or local levels.
>
> [Ibid.]

The Court extended this protection to independent contractors in Umbehr, supra, 518 U.S. at 684-85, 116 S. Ct. at 2352, 135 L. Ed. 2d at 857 (termination of independent contractor's contract in retaliation for public criticism of the county and the board was violation of First Amendment) and O'Hare, supra, 518 U.S. at 726, 116 S. Ct. at 2361, 135 L. Ed. 2d at 886 (towing company

dropped from list of approved companies used by city after owner declined to contribute to city administration's re-election and supported opposition).

Although plaintiff identifies a number of employment actions he claims infringed upon his First Amendment rights, he has not identified any "expressive exercises or beliefs" of his that were "sufficiently similar to those of the plaintiffs in the seminal cases" to be protected by the First Amendment. See Commc'ns Workers, supra, 335 N.J. Super. at 289-90. He did not support a losing candidate, fail to yield to pressure to support any particular candidate or exercise his right to refrain from any political activity.

Plaintiff described his political participation as minimal, all in support of the UCDC, and not any particular faction. His contention is that he was discriminated against because his brother was a member of a faction of the Democratic Party that clashed with the other faction led by DeFilippo. But, in his deposition testimony, he maintained he was not a member of the disfavored faction. Thus, he has not presented a case in which his "political affiliation" was separate from the interest identified with DeFilippo based on a divergence from "commonality of political purpose, partisan activity and political support." See Erb v. Borough of Catawassa, 749 F.

Supp. 2d 244, 254 (M.D. Pa. 2010) (citing <u>Curinga v. City of Clairton</u>, 357 <u>F.</u>3d 305, 311 (3d Cir. 2004)). And, the act of retaliation he cites -- the decision not to assign him to his former position as the head of the Division of Facilities Management in 2013 -- was made by Faella, whom he described as closely aligned with the faction at odds with DeFilippo.

As we discern no evidence of constitutionally protected conduct by plaintiff that could support a prima facie case of the second <u>Galli</u> element, plaintiff's NJCRA claim was properly dismissed.

IV.

Plaintiff's failure to show he engaged in constitutionally protected conduct substantially erodes his claim that Devanney was not shielded from liability by qualified immunity.

The qualified immunity doctrine is an affirmative defense that "shields government officials from a suit for civil damages when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Gormley v. Wood-El</u>, 218 <u>N.J.</u> 72, 113 (2014) (quoting <u>Harlow v. Fitzgerald</u>, 457 <u>U.S.</u> 800, 818, 102 <u>S. Ct.</u> 2727, 2738, 73 <u>L. Ed.</u> 2d 396, 410 (1982)). This defense is available when a plaintiff asserts a claim for money damages under the NJCRA. <u>Ramos v. Flowers</u>, 429 <u>N.J. Super.</u> 13, 24 (App.

Div. 2012).

In <u>Saucier v. Katz</u>, 533 <u>U.S.</u> 194, 201, 121 <u>S. Ct.</u> 2151, 2156, 150 <u>L. Ed.</u> 2d 272, 281 (2001), the Supreme Court identified a two-pronged analysis to be employed in determining whether qualified immunity applies:

> One prong asks whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]"  The other prong asks "whether the right was 'clearly established' at the time of defendant's alleged misconduct."  In other words, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."
>
> [<u>Ramos</u>, <u>supra</u>, 429 <u>N.J. Super.</u> at 27-28 (alteration in original) (citations omitted).]

Using the flexible approach later endorsed by the Supreme Court in <u>Pearson v. Callahan</u>, 555 <u>U.S.</u> 223, 236, 129 <u>S. Ct.</u> 808, 818, 172 <u>L. Ed.</u> 2d 565, 576 (2009), we apply "either or both of the two prongs" of this analysis.  <u>Ramos</u>, <u>supra</u>, 429 <u>N.J. Super.</u> at 27.  And, as we observed, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  <u>Id.</u> at 28 (alteration in original).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"

Gormley, supra, 218 N.J. at 113 (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523, 531 (1987)). It is imperative that this inquiry "be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 598, 160 L. Ed. 2d 583, 589 (2004) (quoting Saucier, supra, 533 U.S. at 201, 121 S. Ct. at 2156, 150 L. Ed. 2d at 281). Thus, courts are required to review the "case law existing at the time of the defendant's alleged improper conduct" and determine whether there was "sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001), cert. denied, 535 U.S. 989, 122 S. Ct. 1543, 152 L. Ed. 2d 469 (2002).

In describing the clearly established right he asserts, plaintiff states,

> [T]he key issue is not simply whether political affiliation with [his brother] is protected conduct, but whether a County employee is protected from adverse actions orchestrated by a purely political person (DeFilippo) for political reasons — to solidify her power by sending the chilling message to County employees to walk "in lockstep" with her or risk their jobs, which action was effectuated by Defendant Devanney.

Even if we accept plaintiff's view that there was a political motive for the employment actions he complains of, the dispositive issue is whether any of those actions infringed upon plaintiff's exercise of a right protected by the First Amendment. As we have noted, the political activity and association he has described does not fit within the traditional political affiliation categories that are "clearly established" as constitutionally protected. In the absence of any precedent that established plaintiff's association and activities as constitutionally protected, it follows that Devanney could not be on notice that the actions he took regarding plaintiff's employment were constitutionally prohibited. Therefore, Devanney was correctly afforded qualified immunity, and plaintiff's NJCRA claim against him was properly dismissed.[4]

V.

Finally, we turn to the dismissal of plaintiff's retaliation claim. We agree that this claim was properly dismissed, albeit for reasons different from those given by the trial judge.

Plaintiff's complaint alleges that, after the lawsuit was

---

[4] Although plaintiff's complaint requested equitable relief, he does not argue that this demand precludes the availability of the qualified immunity defense. Because plaintiff's NJCRA claim is fatally deficient, this issue merits no further discussion. R. 2:11-3(e)(1)(E).

filed, he was transferred to another "non-job" assignment and was not appointed to the position of County Division Head, Division of Facilities Management when that position became vacant. The complaint cites only one authority as legal support for his claim, that the actions were taken to retaliate for his filing a lawsuit asserting his rights under the NJCRA.

Like 42 U.S.C.A. § 1983, on which it was modeled, the NJCRA provides a means of vindicating substantive rights guaranteed by federal law and New Jersey's Constitution and laws and is not a source of rights itself. Gormley, supra, 218 N.J. at 97-98. Unlike the Law Against Discrimination, N.J.S.A. 10:5-1 to -49, and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8, the NJCRA does not explicitly authorize an action for retaliation based upon the filing of a lawsuit. See N.J.S.A. 10:5-12(d); N.J.S.A. 34:19-3.

The NJCRA authorizes a private right of action in the following provision:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of

22

law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c) (emphasis added).]

Two types of private claims are recognized under this statute: (1) a claim when one is "deprived of a right," and (2) a claim when one's rights have been "interfered with by threats, intimidation, coercion or force." Felicioni v. Admin. Office of Courts, 404 N.J. Super. 382, 400 (App. Div. 2008), certif. denied, 203 N.J. 440 (2010); see also Ramos, supra, 429 N.J. Super. at 21.

Plaintiff contends he was subjected to retaliation for engaging in activity protected under the First Amendment and Article 1, Sections 6 and 18 of the New Jersey Constitution. He argues the correct analysis of his retaliation claim is a tripartite test enunciated in Baldassare v. New Jersey, 250 F.3d 188 (3d Cir. 2001), as follows:

> First, plaintiff must establish the activity in question was protected. For this purpose, the speech must involve a matter of public concern. Once this threshold is met, plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. . . . [P]laintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action. Lastly, the public employer can rebut the claim by demonstrating it would

> have reached the same decision . . . even in
> the absence of the protected conduct.
>
> [Id. at 194-95 (emphasis added) (citations
> and quotations omitted).]

Plaintiff contends the filing of his lawsuit satisfies the requirement that he engaged in protected conduct because it "pertained to a matter of public concern, to wit, political retaliation being carried out by, inter alia, Defendant Devanney." We reject this argument.

Returning to the claims available to plaintiff under the NJCRA, it is evident plaintiff was not "deprived" of the right to file this lawsuit. Therefore, to sustain this action he must show interference with that right by threats, intimidation, coercion or force. See Tumpson v. Farina, 218 N.J. 450, 473 (2014). Although it is questionable that the employment actions complained of constitute "threats, intimidation, coercion or force," within the meaning of the NJCRA, plaintiff's retaliation claim ultimately fails because his lawsuit seeking redress for adverse employment actions personal to him does not merit protection under the First Amendment.

In Borough of Duryea v. Guarnieri, 564 U.S. 379, 386, 131 S. Ct. 2488, 2493, 180 L. Ed. 2d 408, 420 (2011) the Supreme Court held that when a public employee sues a government employer under either the First Amendment's Speech Clause or

Petition Clause, the employee must show he spoke as a citizen on a matter of public concern. "[W]hether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" Id. at 398, 131 S. Ct. at 2501, 180 L. Ed. 2d at 428 (quoting Connick v. Myers, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708, 720 (1983)).

The Court cautioned that the right of a public employee under the Petition Clause is "not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." Id. at 399, 131 S. Ct. at 2501, 180 L. Ed. 2d at 428. Thus, a lawsuit that seeks to advance interests personal to the plaintiff will not satisfy the public concern requirement. See ibid., 131 S. Ct. at 2501, 180 L. Ed. 2d at 428. ("A petition that 'involves nothing more than a complaint about a change in the employee's own duties' does not relate to a matter of public concern . . . ." (citation omitted)); United States v. Nat'l Treasury Emps. Union, 513 U.S. 454, 466, 115 S. Ct. 1003, 1013 130 L. Ed. 2d 964, 979 (1995) (observing "employee comment on matters related to personal status in the workplace" does not fall within category of protected speech). Cf. Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439, 445 (2004) (To satisfy CEPA's requirement under N.J.S.A. 34:19-

3(c)(3) that employer activity is incompatible with a clear mandate of public policy, "the complained of activity must have public ramifications, and . . . the dispute between employer and employee must be more than a private disagreement."); see also Turner v. Associated Humane Soc'ys., Inc., 396 N.J. Super. 582, 593-94 (App. Div. 2007); Cosgrove v. Cranford Bd. of Educ., 356 N.J. Super. 518, 525-26 (App. Div. 2003) (holding an employee who claims employer retaliatory action for complaining about the unfair allocation of overtime does not have a claim under N.J.S.A. 34:19-3(c)(3) because such a complaint deals with the employee's personal harm, not harm to the public).

Although plaintiff attempts to cast his complaint as raising issues of public concern, his allegations regard the conditions of his employment and the remedies sought are limited to relief designed to rectify employment actions he contends were adverse to him. Because his lawsuit essentially concerns an employment dispute rather than a matter of public concern, plaintiff cannot satisfy the first prong of the tripartite test applicable to his retaliation claim, see Baldassare, supra, 250 F.3d at 194-95, and therefore fails to support a claim under the NJCRA. His retaliation claim was properly dismissed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION