**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2918-15T4

ANDREW FREY, ALEX BADAMO,
and RALPH EUSEBIO,

    Plaintiffs-Appellants,

and

SAMUEL TORRES,

    Plaintiff,

v.

CITY OF HOBOKEN,
LOCAL 1078 HOBOKEN FIREFIGHTERS, and
MATTHEW MARKEY, Local 1078 President,

    Defendants-Respondents.

_____

Submitted December 19, 2017 — Decided July 19, 2018

Before Judges Carroll, Leone, and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Docket No. L-5045-13.

Law Offices of Louis A. Zayas, attorneys for
appellants (Louis A. Zayas, of counsel and on
the briefs; Alex Lee and Cory Bonk, on the
briefs).

Dvorak & Associates, LLC, attorneys for respondent City of Hoboken (Lori A. Dvorak, of counsel; Kurt J. Trinter, on the brief).

Cohen, Leder, Montalbano & Connaughton, LLC, attorneys for respondents Local 1078 Hoboken Firefighters, Matthew Markey, and Local 1078 President (Bruce D. Leder, on the brief).

PER CURIAM

Plaintiffs Andrew Frey, Alex Badamo, Ralph Eusebio, and Samuel Torres filed a five-count complaint in the Law Division against defendants City of Hoboken (City), Hoboken Firefighters Association, Local 1078 (Local), and its president Matthew Markey. Count one alleged all defendants violated the Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. The complaint alleged Markey and the Local committed tortious interference with contractual relations in count two, tortious interference with prospective economic advantage in count three, and breach of contract in count four. Count five alleged Markey breached his fiduciary duty.

Frey, Badamo, and Eusebio (plaintiffs)[1] appeal from multiple orders granting summary judgment in favor of defendants; denying plaintiffs' motions for reconsideration; and denying their motion to disqualify counsel representing Markey and the Local. We affirm.

---

[1] Samuel Torres has not appealed.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "[T]he court must accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom[.]" Id. at 535 (citation omitted).

An appellate court "review[s] the trial court's grant of summary judgment de novo under the same standard as the trial

court." <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co.</u>, 224 N.J. 189, 199 (2016). We must hew to that standard of review.

## II.

Plaintiffs appeal Judge Francis B. Schultz's December 9, 2014 order granting the City summary judgment on count three, the only count against the City. That count alleged the City violated the CRA by conspiring with Markey and the Local to deprive plaintiffs of their constitutional rights.

## A.

Regarding the City's motion, the following facts are undisputed unless otherwise indicated. Plaintiffs have been employed as firefighters by the City since at least 2004. They took the Civil Service test for promotion to captain. The resulting list issued June 10, 2009, ranked Badamo 13th, Eusebio 15th, and Frey 16th among twenty-three eligible candidates.

In May 2011, the first twelve firefighters on the 2009 list were promoted to captain. After those promotions, Badamo became 1st, Eusebio 3rd, and Frey 4th on the 2009 list.

An "Ordinance to Amend Section 59A-31" was proposed. It stated that Hoboken wished to promote four firefighters to the rank of captain in anticipation of retirements on or before April 1, 2013. It proposed amending the Table of Organization (Table) to temporarily raise the maximum number of captains from thirty

to thirty-four, with that level to decrease back to thirty as current captains retired.

The proposed ordinance was placed on the agenda for the November 28, 2012 City Council meeting. However, on November 27, Hoboken withdrew the proposed ordinance from the agenda.

The following emails were proffered. At 11:56 p.m. on November 27, Tooke emailed Chief Blohm saying "[b]efore we can determine to proceed we will need some additional information." Tooke asked the Chief for a projection of savings assuming the four firefighters promoted to captain would waive the raise in pay until the retirement of the four captains. About an hour later, Blohm responded that a detailed savings projection was not possible but that there would be savings from reduced overtime.

Tooke's email also requested an official union position on the proposal. On December 3 Markey emailed Tooke "following up with our conversation last week regarding [the Local's] position," and stating he would respond after a meeting on December 11 where it would be discussed with the membership. Within an hour, Tooke emailed Markey "to confirm that the issue of temporarily changing the [Table] to increase the number of [c]aptains has been tabled, and would not be on the council agenda, until such time as the collective bargaining units have had a chance to discuss and consider the issue and respond."

 A-2918-15T4

On December 12, 2012, the 2009 list was replaced by a new list based on a new examination.[2] The 2012 list ranked Markey's brother 4th, Markey 13th, Eusebio 23rd, and Frey 28th. Badamo was not on the list.

According to emails, on December 14 Markey emailed Tooke and said the Local had discussed the proposal and was in favor of raising the Table but wanted the raise to be permanent. On December 21, Markey said the same in a letter emailed to Tooke.

On March 19, 2013, Battalion Chief Luis Moreno announced that the first eight candidates on the 2012 list would be promoted to captain, including Markey's brother. After those promotions, Eusebio became 15th, and Frey 20th.

B.

In opposition to the City's motion for summary judgment, plaintiffs submitted certifications from Eusebio and Frey. Regarding the City, Eusebio and Frey averred that Tooke knew or "should have known" Markey was not the proper party with whom to discuss promotions, which were normally handled by Fire Superiors Local 1076. Eusebio averred Mayor Zimmer was communicating to

---

[2] A promotional list generally expires "three years from the date of its establishment," N.J.S.A. 11A:4-6, but "[w]hen a promotional list for a law enforcement or firefighter title  is extended until a new promotional list is available for certification and appointments, the extended list shall expire when the new promotional list is issued," N.J.A.C. 4A:4-3.3(e).

Markey. Frey also averred Tooke's communicating with Markey was the beginning of a conspiracy to secure political support for Mayor Zimmer in return for allowing the 2009 list to expire. Plaintiffs did not aver any personal knowledge of such a scheme.

The judge properly did not view this vague "conjecture and speculation" as creating genuine issues of fact. Under Rule 4:46-5(a),

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleading, but must respond by affidavits meeting the requirements of R. 1:6-6 . . . setting forth specific facts showing that there is a genuine issue for trial.

Rule 1:6-6 requires that affidavits be "made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify." Thus, "[a] certification will support the [denial] of summary judgment only if the material facts alleged therein are based, as required by Rule 1:6-6, on 'personal knowledge.'" Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 599 (App. Div. 2011). "[I]nadmissible hearsay" or supposition "cannot be considered evidence in the summary judgment

record." <u>Chi. Title Ins. Co. v. Ellis</u>, 409 N.J. Super. 444, 457 (App. Div. 2009).[3]

The judge found the only allegation regarding the City based on personal knowledge was Frey's certification that, at the November 28 City Council meeting, Tooke told him "the ordinance was removed at the request of President Markey for the Union to review and approve." However, this allegation did not create a genuine issue of fact as it was substantially consistent with the emails and Tooke's certification. "[W]here the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature,' the proper disposition is summary judgment." <u>Brill</u>, 142 N.J. at 529 (citation omitted).

In any case, the alleged dispute was not material because neither it nor any evidence proffered by plaintiffs supported a CRA violation. The CRA "is a means of vindicating substantive rights and is not a source of rights itself." <u>Gormley v. Wood-El</u>, 218 N.J. 72, 98 (2014). Similarly, "the 'gist of [a civil conspiracy] is not the unlawful agreement, "but the underlying wrong which, absent the conspiracy, would give a right of

---

[3] Later, in their depositions, plaintiffs admitted they had no personal knowledge whether Markey and Tooke reached any such agreement, or whether Markey or the Local ever supported Mayor Zimmer.

action."'" <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 177-78 (2005) (citations omitted).

Plaintiffs claimed the underlying wrong was punishment for their political affiliation. The grant or denial of a promotion to a non-political position "based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." <u>Rutan v. Republican Party</u>, 497 U.S. 62, 75 (1990); <u>see</u> <u>Lapolla v. Cty. of Union</u>, 449 N.J. Super. 288, 300 (App. Div. 2017).

"A plaintiff who alleges retaliation for political affiliation must show: (1) he was 'employed at a public agency in a position that does not require political affiliation'; (2) he was 'engaged in constitutionally protected conduct'; and (3) the conduct was 'a substantial or motivating factor in the government's employment decision.'" <u>Lapolla</u>, 449 N.J. Super. at 298 (citation omitted). However, plaintiffs failed to proffer any evidence to support the second or third prerequisites. Plaintiffs' certifications did not state they were engaged in protected conduct or had a political affiliation, that their conduct or affiliation was known to the City, or that it was a motivating factor in the City's decision to withdraw the proposed ordinance. <u>See</u> <u>id.</u> at 303. Without proof of an underlying wrong, the judge "correctly

dismissed the conspiracy count." Rezem Family Assocs. v. Borough of Millstone, 423 N.J. Super. 103, 122 (App. Div. 2011).

Plaintiffs also claim summary judgment was premature as discovery was incomplete. However, "[a] motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to '"demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action."'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (citations omitted).

Plaintiffs argued they wanted to depose Tooke, but failed to show that would "produce any additional facts necessary to a proper disposition of the motion." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 341 (App. Div. 2013). Plaintiffs now contend they should have been allowed to depose Tooke and Markey before the City received summary judgment. However, plaintiffs deposed them afterwards, and cannot point to anything in their depositions which provided the missing evidence of retaliation against plaintiffs based on political affiliation. Plaintiffs have shown nothing that would "alter the outcome." Young v. Hobart W. Grp., 385 N.J. Super. 448, 469 (App. Div. 2005). Thus, the judge properly granted summary judgment to the City.

III.

Plaintiffs next appeal Judge Schultz's December 4, 2015 order denying reconsideration of the December 9, 2014 order granting summary judgment to the City.[4] Plaintiffs contend the depositions of Tooke and Markey revealed numerous "incongruities." However, as the judge ruled, the alleged inconsistencies are "trivial" and not material to show retaliation for political affiliation.

On reconsideration, plaintiffs presented the certification of Angel Alicia, who was the City's Director of Public Safety under Mayor Zimmer until April 2011. Alicia's certification stated: "In my time as Director, I did not have any direct or indirect conversations with Union President Markey about any efforts to promote fire fighters"; "the local unions would not have been part of those conversations, but rather the Fire Chief"; "there was no requirement or legitimate purpose to request or obtain union approval by Local 1078 in order to promote fire fighters to captain" as "the decision to promote rests exclusively with the City."

---

[4] Plaintiffs' motion was not untimely because the December 9, 2014 order "adjudicate[d] fewer than all the claims as to all the parties" and thus was "subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." Lombardi v. Masso, 207 N.J. 517, 534 (2011) (quoting R. 4:42-2); see Dickson v. Selective Ins. Grp., Inc., 363 N.J. Super. 344, 349 n.3 (App. Div. 2003).

However, this was not just a simple promotion. Rather, it was a proposed ordinance to amend the Table. Moreover, the proposal was for only a temporary increase in the number of captains permitted by the Table, and the City wanted the promoted firefighters to waive the higher captain's salary, until the existing captains retired. As the judge noted, "[t]he proposed ordinance clearly impacted both unions, especially if the newly promoted captains would have captain responsibility but only firefighter salaries" and if the increase in the Table was only temporary. Under these unusual circumstances, Tooke's attempt to ascertain Local 1078's position before the proposed ordinance was submitted to the Council was not evidence of a wrongful act, even if Alicia handled different circumstances differently in his day.

Nonetheless, Alicia opined that "there is no purpose in withdrawing an ordinance seeking to change the [Table] to promote four fire fighters to allow the union to vote on it." However, Alicia's opinions on the purposes of defendants were inadmissible. Alicia did not claim personal knowledge of their purposes as required by Rule 1:6-6, his opinion was not based on his sensory perceptions as required for a lay opinion under N.J.R.E. 701, and he was not proffered as an expert under N.J.R.E. 702. In any event, his opinion "represented only his personal view," Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 401 (2014), and was thus

"'insufficient to satisfy a plaintiff's burden on a motion for summary judgment,'" Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 330 (App. Div. 2017) (citation omitted). "Inadmissible evidence may not be used to affect the outcome of a summary judgment motion." Randall v. State, 277 N.J. Super. 192, 198 (App. Div. 1994).

Alicia also asserted that "[d]uring my time" as director, the Table was "flexible, and promotions over the Table . . . were allowed when necessary to meet the public safety needs in the City of Hoboken." However, "[t]he enabling statutes for the creation of police departments, N.J.S.A. 40A:14-118, and fire departments, N.J.S.A. 40A:14-7," allow the governing body to adopt ordinances "creating a table of organization." In re Referendum Petition to Repeal Ordinance 04-75, 388 N.J. Super. 405, 417 (App. Div. 2006); see N.J.S.A. 40A:14-7 ("The governing body of any municipality, by ordinance, may create and establish a paid or part-paid fire department and . . . appoint such members, officers and personnel as shall be deemed necessary."). In limiting the number of captains to thirty in the Table, Hoboken's governing body stated: "The staff of the Division of Fire shall not exceed the following sworn personnel, within the budgetary constraints established by the Council[.]" Hoboken Code § 59A-31 (emphasis added).

"The established rules of statutory construction govern the interpretation of a municipal ordinance." Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999). "In analyzing legislation, 'the words "must" and "shall" are generally mandatory.'" State v. Sorensen, 439 N.J. Super. 471, 488 n.6 (App. Div. 2015) (quoting Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 391 (1959)). Here, the governing body's use of "shall" "clearly indicates that [it] meant [the Table] to be mandatory." See State v. Thomas, 188 N.J. 137, 149 (2006). Thus, § 59A-31's limit of thirty captains was mandatory, not flexible, and "no appointment may be made to any [fire] department position not created" by ordinance. See Reuter v. Borough Council, 167 N.J. 38, 43 (2001).[5] Accordingly, Alicia's opinion that the Table was flexible was an erroneous opinion on a question of law which must be disregarded on summary judgment. See Perez v. Rent-A-Center, Inc., 375 N.J. Super. 63, 73 (App. Div. 2005), rev'd on other grounds, 186 N.J. 188 (2006).[6]

---

[5] In Reuter, our Supreme Court held the enabling statute for police "require[s] the type and number of police positions to be created by ordinance." 167 N.J. at 41; see Loigman v. Twp. Comm., 409 N.J. Super. 13, 22-26 (App. Div. 2009). We need not decide whether the governing body was required to similarly specify the type and number of fire positions, as it chose to exercise its power to do so.

[6] Tooke testified that when promotions have occurred despite the limits in the Table, "it's been a matter of days or a couple of weeks, not several months." In any event, Tooke too cannot change the mandatory language of § 59A-31.

In any event, Alicia's certification provided no evidence that Tooke's attempt to obtain union concurrence was intended to retaliate against plaintiffs for their political affiliation. Plaintiffs cite Alicia's observation that "[d]uring my time as Director of Public Safety," "Mayor Zimmer was politically attacked by the police union give[n] her proposal to layoff police officers," but "[t]here was no similar political opposition from the fire fighter union." However, Alicia's alleged observation about the earlier threatened layoffs does not show Markey had any political motivation to retaliate against plaintiffs regarding the proposed Ordinance in November 2012.[7]

In any event, "a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). There was no abuse of discretion here.

---

[7] Moreover, in opposing the summary judgment motion by Markey and the Local, plaintiffs had already admitted that Markey was elected president of the Local in May 2011, after Alicia's tenure, and that Markey "complained about the City's plan to layoff firefighters and sent letters and emails to the Administration in protest," including letters to Mayor Zimmer.

A-2918-15T4

Plaintiffs also appeal Judge Christine M. Vanek's November 2, 2015 order granting summary judgment to Markey and the Local on every count except breach of contract, her February 5, 2016 order denying reconsideration of that order, and her February 5, 2016 order granting summary judgment to Markey and the Local on the breach of contract count. We affirm substantially for the reasons set forth in Judge Vanek's written opinion dated November 4, 2015, and her written opinions dated February 5, 2016. In addition to our discussion above, we add the following.

Count one, plaintiffs' CRA claim against Markey and the Local, failed given the absence of proof that the City conspired to violate plaintiffs' civil rights. The CRA protects against the deprivation of or interference with civil rights by a person or entity "acting under color of law." N.J.S.A. 10:6-2; see Perez v. Zagami, LLC, 218 N.J. 202, 217 (2014). Thus, "a private CRA cause of action only may be pursued against persons acting under color of law." Perez, 218 N.J. at 204. "[T]he CRA does not provide a private action based on a deprivation of civil rights irrespective of state action[.]" Id. at 216 & n.4. In any event, plaintiffs also failed to proffer evidence that Markey or the Local conspired to deprive them of civil rights based on their political affiliation.

In count two, plaintiffs could not show Markey or the Local tortiously interfered with any contract plaintiffs might have with the City, because plaintiffs had no contractual right to be promoted. "No right accrues to a candidate whose name is placed on an eligible list. 'The only benefit inuring to such a person is that so long as that list remains in force, no appointment can be made except from that list.'" In re Foglio, 207 N.J. 38, 44 (2011) (citations omitted).

Similarly, plaintiffs did not show tortious interference with prospective economic advantage under count three. "A plaintiff shows causation when there is 'proof that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits.'" Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 759 (1989) (citation omitted). Plaintiffs' claim relies on the suppositions, for which they submitted no proof, that the proposed ordinance would have passed on first reading on November 28, that it would have passed on second reading, that it would have been signed by the Mayor, and that the City would then have hired new captains, all before the 2009 list expired on December 11. Moreover, the second reading must "be at least 10 days after the first reading," N.J.S.A. 40:49-2(b), and the next scheduled City Council meeting was December 19, 2012, after the 2009 list

expired.  Plaintiffs offered no proof that the City Council would have wanted or been able to schedule an emergency session solely to promote them rather than other firefighters who attained a higher score on a more recent examination.

Under count four, plaintiffs also failed to show a breach of contract by Markey or the Local.  "The relationship between a member and a union is a contractual one; the union's bylaws and constitution are the contract, and the contract is enforceable in state court."  Sheet Metal Workers' Intern. Ass'n Local Union 22 v. Kavanagh, 443 N.J. Super. 39, 43 (App. Div. 2015).  However, plaintiffs cannot identify a provision of the Local's constitution or bylaws that was violated.

To support count five charging Markey with a breach of fiduciary duty, plaintiffs cite the Labor-Management Relations Act and Labor-Management Reporting and Disclosure Act (LMRDA), but those acts do not apply where the employer is "any State or political subdivision thereof."  29 U.S.C. §§ 152(2), 402(e).  In any event, the LMRDA imposes a fiduciary duty on union officers to handle union money and property "'solely for the benefit of the organization and its members,'" not for failing to consult with members as alleged by plaintiffs.  Dzwonar v. McDevitt, 177 N.J. 451, 468 (2003) (quoting 29 U.S.C. § 501(a)).

It is undisputed Markey and the Local owe "a duty of fair representation" to its members. D'Arrigo v. N.J. State Bd. of Mediation, 119 N.J. 74, 76 (1990). "The duty requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" Maher v. N.J. Transit Rail Operations, 125 N.J. 455, 476 (1991) (quoting Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 563 (1990) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967))). Nonetheless, the "concept of 'fair representation' is a limited one," and the duty is breached "'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" Saginario v. Attorney General, 87 N.J. 480, 488, 494 n.7 (1981) (quoting Vaca, 386 U.S. at 190); see Maher, 125 N.J. at 478.

"[U]nder the 'arbitrary' prong, a union's actions breach the duty of fair representation 'only if [its conduct] can be fairly characterized as so far outside a "wide range of reasonableness" that it is wholly "irrational" or "arbitrary."'" Marquez v. Screen Actors Guild, 525 U.S. 33, 45 (1998) (quoting Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 78 (1991)). It was not wholly "irrational" for Markey to seek time for the Local to discuss, or to oppose, a proposal that would not permanently increase the

number of captains but would do so only temporarily and with a waiver of the salary increase. See Air Line Pilots Ass'n, 499 U.S. at 67. Allowing such a temporary increase with a waiver of the salary increase would set a precedent a union may wish to oppose. "A union's decision to avoid [a] slippery slope is not a fortiori a decision made in bad faith." See Marquez, 525 U.S. at 48.

Under the discrimination prong, "a plaintiff must 'adduce substantial evidence of [bias] that is intentional, severe, and unrelated to legitimate union objectives.'" Maher, 125 N.J. at 478 (alteration in original) (quoting Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge, 403 U.S. 274, 301 (1971)). As set forth above, plaintiffs failed to show any political bias against them, and have not alleged any other discriminatory bias. See Vaca, 386 U.S. at 177. In any event, to seek time to consider, or to oppose, the proposal was not unrelated to legitimate union objectives.

Moreover, it was not a breach of the duty of fair representation if the result of Markey's consulting with the union about the proposed ordinance meant any promotions would go not to the persons ranked highly on the 2009 list, such as plaintiffs, but to other union members who scored higher on the more recent test. A union does not breach the "duty of fair representation

20

in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another." Humphrey v. Moore, 375 U.S. 335, 349 (1964) (finding no breach where a union president "supported one group and opposed the other" even though he represented both). Unions frequently face decisions that benefit some of their members and harm other members. "Thus, the mere fact that a negotiated agreement results . . . in a detriment to one group of employees does not establish a breach of duty by the union." Belen v. Woodbridge Twp. Bd. of Educ., 142 N.J. Super. 486, 491 (App. Div. 1976).

Thus, "on the motion for summary judgment, [plaintiffs] ha[d] the additional burden of furnishing proof of some probative value showing that the union acted in bad faith." Donnelly v. United Fruit Co., 40 N.J. 61, 96 (1963). "There must be 'substantial evidence of fraud, deceitful action or dishonest conduct.'" Amalgamated Ass'n, 403 U.S. at 299 (quoting Humphrey, 375 U.S. at 348).

Plaintiffs failed to meet this high standard. They cite Tooke's deposition testimony that the proposed ordinance was based on suggestions Markey made in early fall. If true, that shows Markey was originally trying to arrange for captain positions for plaintiffs to fill. That Markey tried to submit the proposal to

the membership also does not show bad faith.[8] They argue Markey wanted the proposed ordinance withdrawn on November 28 because he knew it would benefit him and his brother, but there was no evidence that Markey knew the new list was coming out soon or that he or his brother scored highly on that list.

Plaintiffs argue that after the proposed ordinance was withdrawn, Markey failed to call a union meeting to discuss the proposed ordinance, but Frey and Eusebio certified that "[o]n December 11, 2012, Markey scheduled a union meeting. At this meeting, Markey suggested to raise the [Table]." Plaintiffs argue that Markey was promoted to captain in March 2013, but Markey was not among the eight firefighters who were promoted.[9]

Plaintiffs also cite Frey's certification:

> When I contacted President Markey to inquire about why the ordinance was removed, President Markey initially pretended that he had no idea that there was an ordinance and stated that he did not know what I was talking about. Later, President Markey said that Director Tooke wanted to discuss it with the union members.

---

[8] To the extent plaintiffs argue that Markey should have gotten the City to propose the ordinance earlier, "negligence does not constitute a breach of the statutory duty of fair representation." Brooks v. N.J. Mfrs. Ins. Co., 170 N.J. Super. 20, 35 (App. Div. 1979).

[9] By the time Tooke testified in 2015, Markey had been promoted.

However, this too was not substantial evidence of fraud, deceitful action, or dishonest conduct. Judge Vanek properly granted summary judgment to Markey and the Local.

V.

Finally, plaintiffs appeal Judge Schultz's July 11, 2014 order denying their motion to disqualify counsel representing Markey and the Local. The "determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010). "[A] motion for disqualification calls for us to balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 273-74 (2012) (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)). As "[d]isqualification of counsel is a harsh discretionary remedy which must be used sparingly[,]" a party seeking disqualification must meet a "high standard." O Builders & Assocs., Inc. v. Yuna Corp. of NJ, 206 N.J. 109, 130 (2011) (alterations in original) (citation omitted).

23

Plaintiffs first claimed counsel had a conflict of interest because he represented both Markey and the Local.[10] However, "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of RPC 1.7." RPC 1.13(e). "For purposes of this rule 'organization' includes any . . . union[.]" RPC 1.13(f).

Nonetheless, plaintiffs claimed the representation of both the Local and Markey violated RPC 1.7. That rule provides that absent consent "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which exists if "the representation of one client will be directly adverse to another client," or if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client." RPC 1.7(a).

Plaintiff did not make either showing. Plaintiffs sued Markey and the Local together, alleging in count three that they conspired together, and alleging in counts one through four that they were liable together. Count five alleged Markey "breached his fiduciary

---

[10] "Our jurisprudence has entertained disqualification motions filed by the attorney's adversary." Van Horn v. Van Horn, 415 N.J. Super. 398, 412 (App. Div. 2010).

duty to [p]laintiffs," and his duty to fairly represent plaintiffs. Plaintiffs did not allege or show that Markey violated any duty to the Local.

Second, plaintiffs claimed counsel had a conflict of interest because he represented the Local of which plaintiffs were members. Plaintiffs assert they were represented by counsel because he represented the Local. However, "a lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." RPC 1.13(a). Thus, counsel did not represent plaintiffs merely because he represented the union. See McCarthy v. John T. Henderson, Inc., 246 N.J. Super. 225, 230 (App. Div. 1991).

Moreover, plaintiffs did not claim counsel had represented them personally. Counsel stated he had never represented any of the plaintiffs, and had never met three of them. Plaintiffs were unable to identify any confidential information counsel had about them, or whether counsel had any contact with plaintiffs. The judge found no evidence counsel ever had any relationship with counsel, and that there was no conflict of interest or impropriety.

Plaintiffs invoke RPC 1.9, which addresses "[d]uties to [f]ormer [c]lients." However, an alleged "former client should have the initial burden of proving that by application of RPC 1.9

25                                                              A-2918-15T4

it previously had been represented by the attorney whose disqualification is sought." Dewey, 109 N.J. at 222.

Plaintiffs relied on State v. Galati, 64 N.J. 572 (1974), concerning the Policemen's Benevolent Association (PBA). Id. at 573. Galati "preclude[d] a PBA attorney in the future from all representations [of an officer being criminally prosecuted] in which an officer from the same PBA chapter will be called to testify." Id. at 578. Galati ruled the PBA had a special role:

> Representatives of law enforcement such as police are components of th[e] administration of justice. The PBA has, in the public mind, a quasi-official status, as the conspicuous spokesman for the interests of all policemen. Any failure of confidence in the PBA diminishes confidence in the police force as a whole, and thus in the administration of justice.
>
> [Id. at 577.]

Galati stressed that disqualification of a PBA lawyer was necessary to avoid the appearance of impropriety. Id. at 576-78.

However, our Supreme Court has refused to "extend Galati to representatives of firefighters' unions." Flamma v. Atl. City Fire Dep't, 118 N.J. 583, 587 (1990). The Court emphasized that a firefighters' local "is not an organization of law-enforcement officials, nor does it have the 'quasi-official status' and close relationship to the administration of justice that the PBA has." Ibid. "[A]bsent a special relationship between the union and the

administration of justice, there is no significant risk of detriment to public confidence in the justice system requiring the attorney's disqualification for an 'appearance of impropriety.'" Id. at 588.

Moreover, "[a] sea change occurred in 2004, when the RPCs were amended to eliminate the 'appearance of impropriety' provisions from all RPCs, including RPC 1.7(c) and RPC 1.9(c)." State v. Hudson, 443 N.J. Super. 276, 288 (App. Div. 2015). The Supreme Court since held that "the 'appearance of impropriety' standard no longer retains any continued validity in respect of attorney discipline." In re Supreme Court Advisory Comm. on Prof'l Ethics Op. No. 697, 188 N.J. 549, 568 (2006). "The Court emphasized the doctrine is not a factor to be considered in determining whether a prohibited conflict of interest exists under RPC 1.7 . . . or 1.9 as its use 'injects an unneeded element of confusion[.]'" Hudson, 443 N.J. Super. at 288-89 (quoting Ethics Op. No. 697, 188 N.J. at 562 n.5). Accordingly, we held in Hudson that "[t]o the extent the conclusion in Galati was based on an appearance of impropriety analysis, it conflicts with the Court's direction, declaring the amorphous and impractical appearance of impropriety doctrine may not serve as a basis to disqualify counsel because of a perceived conflict of interest." Id. at 289.

27                                                                      A-2918-15T4

Plaintiffs failed to show any prior representation, let alone a conflict of interest. Accordingly, the judge properly denied plaintiffs' motion to disqualify counsel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2918-15T4